IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHOON JAMES, | ) | CIVIL NO. 13-00397 JMS-BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) DENYING |
| | ) | DEFENDANT CITY AND COUNTY |
| vs. | ) | OF HONOLULU'S MOTION FOR |
| | ) | SUMMARY JUDGMENT, DOC. |
| CITY AND COUNTY OF | ) | NO. 29; AND (2) DENYING |
| HONOLULU; and John Does 1-50 in | ) | PLAINTIFF CHOON JAMES' |
| their individual or official capacities, | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT AND/OR PARTIAL |
| Defendants. | ) | SUMMARY JUDGMENT, DOC. |
| _____ | ) | NO. 31 |

**ORDER (1) DENYING DEFENDANT CITY AND COUNTY OF
HONOLULU'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 29;
AND (2) DENYING PLAINTIFF CHOON JAMES' MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT,
DOC. NO. 31**

## I. INTRODUCTION

Plaintiff Choon James ("Plaintiff" or "James") filed this action against

Defendant City and County of Honolulu ("Defendant" or the "City") asserting

violations of the U.S. and Hawaii Constitutions and state law claims stemming

from the City's seizure of two signs she placed on 54-282 Kamehameha Highway

(the "subject property").  The City removed these signs pursuant to Chapter 29,

Article 19 of the Revised Ordinances of Honolulu ("ROH") ("Article 19"), which

provides that the City may seize personal property left on public property after

providing twenty-four hours notice.  Although James is the legal owner of the

subject property, it is the subject of an on-going eminent domain action in the First

Circuit Court of the State of Hawaii, and at the time of the sign removal, the City

had obtained an Ex Parte Order of Possession (the "Possession Order") pursuant to

Hawaii Revised Statutes ("HRS") § 101-29.

Currently before the court are Motions for Summary Judgment

brought by both parties.  The City argues that summary judgment should be

granted on all of James' claims because the Possession Order gives the City the

exclusive right of possession of the subject property, making the City's removal of

the signs lawful.  Doc. No. 29.  In comparison, James argues that even assuming

that the City was authorized to seize the signs (an issue she otherwise disputes),

she is still entitled to summary judgment on several of her claims.  Doc. No. 31.

Based on the following, the court DENIES both Motions for Summary Judgment.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

### *1.     The Condemnation Action*

On April 21, 2010, the City filed an action in the First Circuit Court of

the State of Hawaii, Civ. No. 10-1-863-05 RAN (the "State Action"), against

James and her husband Mark Olov James seeking to condemn, in fee simple, the

subject property for use in the Hauula Fire Station Replacement Project.  *See* Doc.

No. 30-4, Def.'s Ex. A.  Until the filing of the State Action, James and her husband

were the lawful owners of the subject property.  Doc. No. 32, Pl.'s Concise

Statement of Facts ("CSF") ¶ 2.[1]

On April 22, 2010, the City filed an Ex Parte Motion for an Order

Putting Plaintiff in Possession of the Property pursuant to HRS § 101-29 ("Ex

Parte Motion").  Doc. No. 30-6, Def.'s Ex. C.  The City's Ex Parte Motion and its

supporting evidence recites that the City is seeking condemnation of the subject

property for a new Hauula Fire Station, and estimates that just compensation for

the subject property is $521,000, which the City paid to the Chief Clerk of the First

Circuit Court.  *Id.*

On April 27, 2010, the State Court entered the Possession Order.[2]  *See*

Doc. No. 30-5, Def.'s Ex. B.  The Possession Order states in relevant part that the

---

[1]  Where the parties do not dispute a particular fact, the court cites directly to the relevant CSF.

James' counsel had difficulty filing her CSF, and as a result filed it one day late on July 15, 2014.  The court rejects the City's argument that the court should penalize James by deeming admitted all the facts in the City's CSF.  *See* Doc. No. 44, Def.'s Reply at 2-4.

[2]  James suggests that the State court filed its Possession Order before receiving the City's Ex Parte Motion because the Possession Order is dated April 26, 2010, and both the Possession Order and Ex Parte Motion are stamped as filed on April 27, 2010.  *See* Doc. No. 39, Pl.'s Resp. CSF ¶ 4.  In this case, the Ex Parte Motion is dated April 22, 2010.  Thus, although the Ex Parte Motion was publicly filed and stamped after the State court ruled, it was clearly received by the State court prior to the April 26, 2010 Possession Order.

City "is hereby awarded possession of the real property described in the Complaint filed herein, and [the City] may do such work thereon as may be required for the purpose for which the taking of said real property, including its appurtenances and any improvements thereon, is sought." *Id.* ¶ 1.

On May 28, 2010, James and her husband filed a Motion to Set Aside the Possession Order, asserting that they filed a separate action in the First Circuit Court of the State of Hawaii seeking to enjoin the condemnation, and that a motion for preliminary injunction was currently pending in that other action. Doc. No. 30-7, Def.'s Ex. D. The State court heard the Motion to Set Aside on October 27, 2010, Doc. No. 30, Def.'s CSF ¶ 5, and denied the Motion on December 28, 2010. *Id.* ¶ 6; Doc. No. 30-8, Def.'s Ex. E.

The State Action is ongoing, and has yet to determine whether the City's taking of the subject property is for a public purpose. Doc. No. 32, Pl.'s CSF ¶ 1.

### 2.  *The Parties' Actions After the Possession Order*

After the Possession Order, James continued to maintain the subject property by having the lawn mowed and performing other work. *See* Doc. No. 39-1, Pl.'s Decl. ¶ 12. When James failed to mow the lot frequently enough, James received a September 14, 2011 citation from the City for a "Vacant Lot

Overgrown." *Id.* ¶ 13; Doc. No. 39-14, Pl.'s Ex. 12.  James also received an

October 4, 2011 citation from the City for "Grubbing work w/o a permit" on the

subject property.  Doc. No. 39-15, Pl.'s Ex. 13.  James paid each of these citations,

as well as the tax she was assessed on the subject property from 2010 through

2013.  Doc. No. 39-16, Pl.'s Ex. 14; Doc. No. 30-11, Def.'s Ex. H (amended

notices of property assessment for 2010-2013).

In comparison, the City took little action on the subject property after

obtaining the Possession Order (before the seizure of James' signs, described

below).  Indeed, although the Capital Budget for the City proposed funds for

"Hauula Fire Station Relocation" in 2012, 2013, and 2014, these funds were

deleted from the versions of the Capital Budget adopted by the City.  *See* Doc.

Nos. 39-7 - 39-12, Pl.'s Exs. 5-10.

### 3.   *The City's Seizure of Signs from the Subject Property*

In protest of the State Action, James erected two signs on the subject

property, which stated "YOUTUBE: Eminent Domain Abuse Hawaii," and

"Eminent Domain Abuse Who's Next?"  Doc. No. 32, Pl.'s CSF ¶ 3.  On May 29,

2013, the City removed the two signs to an offsite storage location, damaging at

least one sign in the process.  *Id.* ¶¶ 4, 6-7.  At or near where the signs were

erected, the City left two "Storage and Removal Notices" pursuant to Article 19, an

ordinance authorizing the City to seize personal property left on public property after providing twenty-four hours notice.[3]  *Id.* ¶ 8.

James subsequently went to a City storage facility to retrieve her signs.  *Id.* ¶ 9.  At the storage facility, James was asked to sign a document entitled "Release of Impounded Property" ("Release Form"), stating:

> Claimant asserts ownership of certain impounded
> personal property (removed from public property
> pursuant to the Revised Ordinances of Honolulu Section
> 29-19.3, as amended) or found property (removed from
> private property pursuant to Hawaii Revised Statutes
> Section 52d-14, as amended) stored by the City and
> County of Honolulu . . . .

Doc. No. 32-6, Pl.'s Ex. 4.  James refused to sign the Release Form, concerned that signing it could affect the pending State Action given that James did not abandon the signs and the State court has yet to make a final determination that the subject property is "public property."  Doc. No. 32-2, Pl.'s Decl. ¶ 15.  That is, James believed that signing the Release Form could be viewed as an admission that the signs were located on "public property," an issue James disputes in the State

---

[3]  Pursuant to ROH § 29-19.3(b), the City may impound "personal property" on "public property" after giving twenty-four hours written notice requiring its removal.  "Personal property" is defined as "any and all tangible property, and includes, but is not limited to, items, goods, materials, merchandise, furniture, equipment, fixtures, structures, clothing, and household items."  ROH § 29-19.2.  "Public property" is defined as "all property that is owned, managed or maintained by the city, and shall include, but not be limited to any street, sidewalk, replacement sidewalk, medial strip, space, ground, mall, building, structure, public park, and any other property of the city."  *Id.*

Action.

The City asserts that James did not ask to alter or amend the language of the Release Form, Doc. No. 37-1, Lani Brown Decl. ¶ 14, while James asserts that she was not allowed to modify it.  Doc. No. 45-1, Pl.'s Decl. ¶ 3.  According to the City, it was willing to allow James to retrieve her signs so long as she signed a form stating that she asserts ownership over them, and that she could have proposed modifications to any objectionable language in the standardized form for the City's consideration.  *See* Doc. No. 37-1, Brown Decl. ¶ 15.  Indeed, James erected other signs on the subject property that were seized pursuant to Article 19 (not at issue in this action), and she retrieved them on November 25, 2013 by signing the Release Form, which she modified to state that she asserts ownership of the impounded personal property and that "this was illegally taken from my property.  I'm still the FEE OWNER."  *See* Doc. No. 37-3, W.D. Balfour Decl. ¶¶ 5-8; Doc. No. 37-6, Def.'s Ex. A.  During a July 21, 2014 status conference before this court, the City agreed to return the signs if James executed a modified Release Form.  On July 25, 2014, James retrieved the signs that are the subject of this action by signing the Release Form, which the City modified to delete the language James found objectionable.  Doc. No. 45-1, Pl.'s Decl. ¶¶ 5-6.

As for the damages caused to the signs at issue in this action, James

was informed that she may submit a claim for any damages with the Department of Corporation Counsel pursuant to § 13-111 of the Revised Charter of the City and County of Honolulu 1973 (2000 ed.).  Doc. No. 37-2, Allen Sato Decl. ¶¶ 3-4. James has yet to do so.  *See* Doc. No. 37-4, Winston Wong Decl. ¶¶ 3-4.

### 4.      *The City's Actions Towards the Subject Property Since the Filing of this Action*

Since the removal of the signs from the subject property and the filing of this action on August 13, 2013, the City has taken some steps directed to the subject property.  In particular, on August 15, 2013, the City filed in the State Action a Certification stating that the City took possession of the subject property on June 4, 2010.  Doc. No. 30-9, Def.'s Ex. F.  On September 10, 2013, the City issued tax reimbursement checks on the subject property to James.  *See* Doc. No. 30-3, Stephanie Hokushin Decl. ¶¶ 3-4; *see also* Doc. Nos. 30-10 - 30-11, Def.'s Exs. G-H.  In January 2014, the City's Department of Design and Construction ("DDC") authorized its architect to begin the process of preparing the design of the new fire station, and in February 2014, the DDC completed a topographical survey of the subject property to facilitate the fire station's design.  Doc. No. 30-2, Clifford Lau Decl. ¶¶ 4-5.

///

///

8

**B.      Procedural Background**

On August 13, 2013, James filed this action asserting claims titled

(1) Violation of Fourth Amendment; (2) Due Process Violation; (3) First

Amendment Violation; (4) Failure to Train and Supervise; (5) Hawaii Constitution

-- Unreasonable Seizure; (6) Hawaii Constitution -- Property and Due Process

Protections; (7) Hawaii Constitution -- Freedom of Speech; (8) Trespass;

(9) Conversion; (10) Replevin; (11) Negligence; and (12) Trespass to Chattels.

On June 25, 2014, the parties filed their Motions for Summary

Judgment.  Doc. Nos. 29, 31.  Oppositions were filed on July 14, 2014, Doc. Nos.

36, 38, and Replies were filed on July 28, 2014.  Doc. Nos. 44, 45.  A hearing was

held on August 12, 2014.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of

Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. <u>DISCUSSION</u>

### A.    **Defendant's Motion for Summary Judgment**

The City argues that it is entitled to summary judgment because "the undisputed facts demonstrate that -- as a matter of law -- the City has the exclusive right to possess the subject property . . . ."[4]  Doc. No. 29-1, Def.'s Mot. at 1.  The City reasons that all of James' claims are based on the assumption that the subject property was James' private property, *see* Doc. No. 1, Compl. ¶ 2, which is factually unsupportable where the Possession Order granted the City the right to possess the subject property.  In light of the Possession Order, the City argues that the City had possession of the subject property to the exclusion of James, meaning that James was trespassing on the subject property when she erected the signs and that the City had the absolute right to remove them.

Based on the following, the court finds that although the City is

---

[4] Even if the City were to ultimately prevail on this argument, it would not dispose of all of James' claims, which are based not only on the seizure of the signs, but also the City's refusal to release them to James without signing the Release Form, and the damage to the signs.

correct that the Possession Order awarded the City possession of the subject

property, genuine issues of fact exist as to whether the Possession Order awarded

the City *exclusive* possession of the subject property, and whether the City

exercised *exclusive* possession of the subject property at the time it removed

James' signs.

### 1.    *The Possession Order*

The Possession Order provides that the City "is hereby awarded

possession of the real property described in the Complaint filed herein, and [the

City] may do such work thereon as may be required for the purpose for which the

taking of said real property, including its appurtenances and any improvements

thereon, is sought."  Doc. No. 30-5, Def.'s Ex. B.  Viewing this language on its

face, the Possession Order says nothing about *exclusive* possession as a matter of

law -- it merely "awarded possession" of the subject property to the City "to do

such work as may be required" for a Hauula fire station.  The Possession Order

offers no insight as to what rights may remain with James.  In other words, the

Possession Order by its own terms does not extinguish all of James' rights to the

subject property and/or grant the City absolute possession, but instead grants the

City possession for the purpose of constructing the Hauula fire station.

HRS § 101-29, Hawaii's quick-take eminent domain statute, also fails

to address this precise issue of whether, as a matter of law, the City had exclusive

possession of the subject property.  Section 101-29 provides in relevant part:

> At any time after the commencement of an action
> pursuant to this part, the State or any county may file a
> motion for an order of possession invoking this section
> and supported by an affidavit alleging, or by oral
> evidence prima facie showing:
>> (1) The right of the State or county to maintain the
>> action;
>> (2) The public use for which the real property
>> sought to be condemned is being taken; and
>> (3) The sum of money estimated by the State or
>> county to be just compensation or damages for the
>> taking of the real property.
>
> Upon such motion and upon payment of such estimated
> sum of money to the clerk of the court for the use of the
> persons entitled thereto, the court shall issue an order ex
> parte putting the State or county in possession of the real
> property sought to be condemned and permitting the
> State or county to do such work thereon as may be
> required for the purpose for which the taking of the
> property is sought.  The order placing the State or county
> in possession shall become effective upon the expiration
> of ten days after service thereof; provided that for good
> cause shown within the ten days, the court may vacate or
> modify the order or postpone the effective date thereof
> for an additional period of time. . . .

Similar to the Possession Order, § 101-29 says nothing about the City

obtaining *exclusive* possession of real property -- rather, it merely states that upon

the appropriate showing, the State court will issue an ex parte order putting the

City "in possession of the real property sought to be condemned and permitting

13

[the City] to do such work thereon as may be required for the purpose for which the taking of the property is sought."  Just as with the Possession Order, this languages suggests that possession is not absolute -- § 101-29 does not grant the City free reign to do as it pleases with the property, and the City may only do such work as may be required for the purpose of the taking.  And even the City recognizes that § 101-29 does not totally divest the landowner of all rights to the real property -- it does not operate to transfer title of the real property, which occurs at the end of a condemnation action.  *See* Doc. No. 29-1, Def.'s Mot. at 7 (citing HRS § 101-29; *McQuillin Municipal Corporations* § 32:90 (3d ed. 2014)).[5]

Thus, the Possession Order and § 101-29 establish, at a minimum, that James still has title to the subject property.  And they do not establish, or even address, whether the Possession Order extinguished, as a matter of law, all rights of possession that James otherwise held to the subject property.  In other words, although the Possession Order granted the City possession of the subject property to build a Hauula fire station -- and the City certainly had the right to take actions to effect this purpose to the exclusion of James -- neither the Possession Order nor § 101-29 address what rights James may have in the subject property until the City

---

[5]  Unlike HRS § 101-29, other quick-take statutes divest the landowner of both possession and title.  *See, e.g.*, 40 U.S.C. § 3114 (vesting title of real property to the federal government under federal quick-take statute).

took such action.

### 2.    *Facts Beyond the Possession Order*

Because the Possession Order by itself does not answer the question -- that is, the Possession Order does not provide that the City shall have "exclusive" possession of the subject property, regardless of the circumstances -- the court turns to the facts beyond the Possession Order.  And the facts, viewed in a light most favorable to James, suggest that the City failed to take possession of the subject property at the time of the Possession Order and instead affirmatively imposed upon James several responsibilities of ownership of the subject property consistent with James' right (or even obligation) to possess the subject property.

In particular, there is a difference between "mere legal title" and "traditional indica of land ownership."  *See Coon v. City & Cnty. of Honolulu,* 98 Haw. 233, 254, 47 P.3d 348, 369 (2002) (distinguishing between the two).  Although the City argues that the Possession Order left James with mere legal title, traditional indica of land ownership include, for example, the right to enter, maintain, and make improvements to real property, and the responsibility to pay taxes.  *See id.* (citing *In re Fasi*, 63 Haw. 624, 634 P.2d 98 (1981) (recognizing the right to enter, maintain, and make improvements to real property as indicia of ownership), *and City of Franklin v. Crystal Ridge, Inc*., 509 N.W.2d 730, 733

15

(Wis. 1994) (noting that the traditional indicia of land ownership include the rights, responsibilities, and benefits associated with that ownership, such as making improvements to the property, enjoyment of its use and profits, maintenance of fire and liability insurance, responsibility for repairs and maintenance, and payment of licenses, fees, and taxes on the property)).

The City imposed upon James several indicia of ownership, suggesting James' right to possess the subject property, including: (1) citing James for failing to maintain the lawn of the subject property on September 14, 2011; Doc. No. 39-14, Pl.'s Ex. 12; (2) citing James for "Grubbing work w/o a permit" on October 4, 2011, Doc. No. 39-15, Pl.'s Ex. 13; and (3) taxing James on the subject property from 2010 through 2013.  Doc. No. 39-16, Pl.'s Ex. 14.  And at the time James erected her signs on the subject property, the City had taken no acts to possess the subject property beyond obtaining the Possession Order.[6]

The City cites no cases -- and the court could find none -- addressing a similar situation where a government entity obtained a possession order yet imposed indicia of ownership on the landowner.  Under these circumstances, a fact

---

[6]  It was not until James filed this action that the City (1) filed in the State Action an August 15, 2013 Certification stating that the City took possession of the Property on June 4, 2010, Doc. No. 30-9, Def.'s Ex. F; (2) issued reimbursement checks for James' taxes on the subject property, *see* Doc. No. 30-3, Stephanie Hokushin Decl. ¶¶ 3-4; *see also* Doc. Nos. 30-10 - 30-11, Def.'s Exs. G-H; and (3) took steps to forward the Hauula Fire Station project, Doc. No. 30-2, Clifford Lau Decl. ¶¶ 4-5.

question exists where the City, on one hand, asserts that it took possession of the

subject property at the time of the Possession Order, but on the other hand,

affirmatively saddled James with the responsibilities of ownership of maintaining

the subject property and paying taxes.  These facts simply do not support the City's

assertion that it had absolute, *exclusive* possession of the subject property at the

time it removed James' signs.  Rather, in spite of the Possession Order, it appears

that the City either did not exercise its right of possession to the subject property

(which it certainly could have done), or at the very least shared possession with

James at the time she erected her signs.[7]

   In opposition, the City argues that the Possession Order cut off *all* of

James' rights of possession to the subject property such that James had no legal

obligation to either mow the lawn or pay taxes for the subject property.  Doc. No.

29-1, Def.'s Mot. at 9-11; *see also* HRS § 101-37 (providing for the payment of

taxes during the pendency of condemnation action out of deposited funds).

According to the City, regardless of any events that occurred after the Possession

---

   [7] James takes her analysis one step further, arguing that the City should be equitably estopped from claiming that James had no possessory rights to the subject property.  Doc. No. 38, Pl.'s Opp'n at 6-11.  The court need not reach this argument to determine the City's Motion for Summary Judgment, and in any event, estoppel applies against the government in only severe cases, requiring "affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government."  *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)).  Plaintiff has not addressed whether this heightened standard could be met in this case.

Order, pursuant to *City & County of Honolulu v. Bishop Trust Co.*, 49 Haw. 494, 421 P.2d 300 (1966), the Possession Order gave the City an "absolute right to obtain immediate possession of the premises," Doc. No. 29-1, Def.'s Mot. at 9-11 (quoting *Bishop Trust Co.*, 49 Haw. at 499, 421 P.2d at 303), and James should have simply sought reimbursement for the taxes and vacatur of the citations.  Doc. No. 44, Def.'s Reply at 8.

     *Bishop Trust* is not as broad as the City contends.  *Bishop Trust* determined that, based on the record before it, the trial court did not err "in concluding that the City had an absolute right to obtain immediate possession of the premises" when it obtained a possession order.  *See* 49 Haw. at 499, 421 P.2d at 303.  And although the City here had an absolute right to immediate possession, it never exercised such a right.  Instead, viewing the facts in a light most favorable to James, it appears that the City either ceded at least some of its possessory rights to James and/or required James to continue her responsibilities of ownership and maintenance of the subject property.  Indeed, James did not take care of the subject property or pay taxes out of largess but because she was prompted by the City, who now asserts she had no obligation to do so.  That James could seek reimbursement of the taxes and/or vacatur of the citations does not change the facts -- the City itself directed her to exercise indica of ownership over the subject property.

18

In further opposition, the City argues that allowing James to erect signs on the subject property would run counter to the intent of quick-take statutes permitting immediate transfer of possession to the City and preventing delays to public projects. Doc. No. 29-1, Def.'s Mot. at 15. The court recognizes that the purpose of quick-take statutes such as HRS § 101-29 is "to provide a means to prevent delays to public projects that could result pending the final determination of just compensation, while at the same time protecting the rights of the landowner." *Forest Pres. Dist. of Du Page Cnty. v. W. Suburban Bank*, 641 N.E.2d 493, 496 (Ill. 1994) (citations omitted); *see also State, Dep't of Transp. v. HJ Grathol*, 278 P.3d 957, 960-61 (Idaho 2012) (providing that Idaho's quick-take provisions "allow state entities that possess the power of eminent domain 'to obtain property . . . for a public purpose without the delay of a lengthy trial.'" (citation omitted)); *Goodwill Cmty. Chapel v. Gen. Motors Corp.*, 503 N.W.2d 705, 707 (Mich. App. 1993) ("The purpose of the condemnation act and its 'quick take' provision is to enable governmental agencies to quickly obtain title so that public projects can proceed without the delays of normal civil litigation."). Despite this general purpose of quick-take statutes, the City ignores that its own actions are not consonant with its assertion that it took possession of the subject property at the time of the Possession Order. The City confuses what it *could* have done under

19

the quick-take statute and what it actually did.  As a result, the general purpose of the quick-take statute does not resolve this factual dispute.

In sum, viewing the facts in a light most favorable to James, the court finds that questions of fact exist as to whether the Possession Order granted the City exclusive possession of the subject property and/or whether, at the time she erected her signs, James had some rights of possession to the subject property.

This Order is limited to the City's narrow argument that it had the "exclusive right of possession" to the subject property,[8] and the unique circumstances presented here where the City placed burdens -- and indica of ownership -- on James.  This Order does not mean to suggest that the Possession Order failed to give the City the right to possess the subject property, to the exclusion of all others, to carry out the public purpose for which the subject property was taken.  Rather, the court finds that fact questions exist as to whether, despite the Possession Order and at the time James had erected the signs, the City failed to take exclusive possession of the subject property and/or gave (or shared

---

[8]  Because issues of fact exist as to whether the City had exclusive possession of the subject property at the time James erected the signs, the court does not address the City's additional arguments that are intertwined with, if not dependent on, this initial determination.  In particular, the City argues that the court should reject any argument by James that the City's removal of the signs was not for "the purpose for which the taking of the property is sought" as required by the Possession Order, Doc. No. 29-1, Def.'s Mot. at 13-15, and that the City has not created a speech forum on the subject property that would support Plaintiff's First Amendment claim.  *Id.* at 16-17.  Where the court finds that genuine issues of fact exist as to Plaintiff's possessory rights to the subject property, addressing these arguments would be premature.

with) James certain rights of possession.  As a result, a question of fact exists as to whether the City could unilaterally seize James' signs at a time when the City had imposed indica of ownership on James.  The court therefore DENIES the City's Motion for Summary Judgment.

## B.    James' Motion for Partial Summary Judgment

James argues that even if the City's seizure of her signs was authorized (*i.e.*, the subject property was "public property" and her signs were properly removed pursuant to Article 19), she is still entitled to summary judgment on several of her claims.[9]  The court addresses each claim in turn.

### 1.    *Due Process (Counts 2 and 6)*

James' due process claims are based on the assertion that her "property was seized and/or destroyed without affording adequate notice and without affording Plaintiff any meaningful opportunity to be heard before or after the seizure or destruction."  Doc. No. 1, Compl. ¶ 37.  James argues, in summary form, that she is entitled to summary judgment on this claim because she was afforded no hearing to object to the language in the Release Form stating that the seizure was pursuant to Article 19, and no meaningful opportunity to seek

---

[9]  Although James initially sought summary judgment on her replevin claim, *see* Doc. No. 31-1, Pl.'s Mot. at 4, her signs have since been returned and James' counsel represented at the August 12, 2014 hearing that this claim has been resolved.

compensation for the damage to her signs.  Doc. No. 31-1, Pl.'s Mot. at 7.  Because

James has not addressed even the basic elements of the due process analysis and

the specific facts of this case, the court rejects this argument.

"The fundamental requirement of due process is the opportunity to be

heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*,

424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552

(1965)).  "This inquiry [] examine[s] the procedural safeguards built into the

statutory or administrative procedure of effecting the deprivation, and any

remedies for erroneous deprivations provided by statute or tort law."  *Zinermon v.*

*Burch*, 494 U.S. 113, 126 (1990).  Determination of what process is due is a

fact-specific inquiry requiring consideration of three factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal
> and administrative burdens that the additional or
> substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

This court has already addressed and applied this framework (in the

context of a motion for preliminary injunction) to one challenge to Article 19 in *De*

*Occupy Honolulu v. City & County of Honolulu*, 2013 WL 2285100, at *5 (D.

22

Haw. May 21, 2013).  James' counsel should be well aware of *De Occupy* and the due process framework -- they represented the plaintiffs in *De Occupy*.  It is therefore a mystery why James failed to address the *Mathews* factors in any meaningful way in light of the facts of this action.  In particular, although James certainly has a property interest in her signs, she has not addressed in any manner whatsoever the procedural safeguards provided in Article 19 to prevent erroneous deprivation, the probable value of additional safeguards (especially in light of the facts taken as true for purposes of this Motion), or the City's interest and burdens of additional safeguards.

Relevant to James' assertion that due process requires a hearing in which she may object to the language in the Release Form, *De Occupy* explains that Article 19 includes several procedural safeguards[10] requiring the City to "'announce its intentions' and allow Plaintiff[] the opportunity to either move [] items away from public property to avoid seizure or retrieve them post-seizure," 2013 WL 2285100, at *6 (quoting *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) ("[T]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance

---

[10]   For example, the City must: (1) provide twenty-four hours written notice before items are seized, ROH §§ 29-19.3(b), 29-19.4(a); (2) provide post-seizure notice describing the items that have been taken and the location where they may be retrieved, ROH § 29-19.5(b); and (3) hold seized items for at least thirty days before destruction.  *Id.*

to argue against the taking."). *De Occupy* further explains that the City has a substantial interest in ensuring that public property is available for use by everyone. Article 19 articulates its purpose as to "maintain public areas in clean, sanitary, and accessible condition, to prevent harm to the health or safety of the public, to prevent the misappropriation of public property for personal use, and to promote the public health, safety and general welfare by ensuring that public property remains readily accessible for its intended uses." ROH § 29-19.1. Article 19 balances this interest with individuals' rights to possession of their personal property through the multiple opportunities given to avoid seizure and/or destruction of seized personal property.

Beyond these general considerations, the facts particular to this action,[11] viewed in a light most favorable to the City, raise questions of fact as to what additional procedural safeguards, if any, are required for due process as to James' claim that she should have been afforded a hearing to challenge the language of the Release Form. In particular, James ignores the very premise of her

---

[11] What due process requires is determined by the particular facts presented. *See Mathews*, 424 U.S. at 334 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (citations and quotations omitted)); *Clukey v. Town of Camden*, 717 F.3d 52, 60 (1st Cir. 2013) ("Whether or not an individual is entitled to pre-deprivation notice is often a difficult, fact-intensive question."); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 319 (2d Cir. 2002) (citing *Mathews* for proposition that "[t]he determination of whether one is entitled to a pre-deprivation hearing is fact-specific").

Motion -- that she is entitled to summary judgment even if the court assumes that the seizure of the signs was authorized pursuant to Article 19.  In other words, James assumes for purposes of her Motion that (1) the subject property is in fact "public property," (2) James placed the signs on public property, (3) the City provided James notice that the signs would be removed pursuant to Article 19 if she did not remove them within 24 hours; and (4) the City removed and stored the signs pursuant to Article 19 after the twenty-four hour notice period.  Thus, even if James is correct that the Release Form required her to concede that the signs were seized pursuant to Article 19 (an issue the court need not decide at this time), James can hardly complain that a hearing is required where the City requested James to sign a document stating (for purposes of her Motion) entirely true statements.

Also cutting against the need for a hearing is that the facts, viewed in a light most favorable to the City, suggest that James could have retrieved her signs in a timely fashion if she had simply asked to modify the language in the Release Form as she later did with other signs that were seized.  According to the City: (1) James did not ask to alter or amend the language of the Release Form, (2) the City was willing to allow James to retrieve her signs so long as she signed a form stating that she asserts ownership over them, and (3) James could have proposed

25

modifications to any objectionable language in the standardized form for the City's consideration.[12]  *See* Doc. No. 37-1, Brown Decl. ¶¶ 14-15.  Indeed, when the City seized other signs James erected on the subject property, she retrieved them by modifying the Release Form.  *See* Doc. No. 37-3, W.D. Balfour Decl. ¶¶ 5-8; Doc. No. 37-6, Def.'s Ex. A.

These facts suggest that there was no real impediment to James retrieving her signs -- she could have obtained return of the signs by signing a Release Form containing true statements (again, for purposes of this Motion), or by asking to change its language.  As a result, a hearing would have added nothing to the process already afforded by Article 19, and instead only increase the administrative burden of ensuring that public property is available for use by the entire public.  Thus, viewing these facts in a light most favorable to the City, James has not established that she is entitled to a hearing to challenge the language of the Release Form.

Finally, as to James' assertion that she was denied a meaningful opportunity to seek compensation for the damage to her signs, the facts, viewed in a light most favorable to the City, suggest otherwise.  The City informed James

---

[12]  Although James asserts that she was not allowed to modify the Release Form, *see* Doc. No. 45-1, Pl.'s Decl. ¶ 3, on a motion for summary judgment, the court views the facts in a light most favorable to the non-moving party.

that she may submit a claim for any damages with the Department of Corporation

Counsel.  Doc. No. 37-2, Allen Sato Decl. ¶¶ 3-4.  In particular, § 13-111 of the

Revised Charter of the City and County of Honolulu 1973 (2000 ed.), provides that

"[n]o action shall be maintained for the recovery of damages for any injury to

persons or property by reason of negligence of any official or employee of the city

unless a written statement . . . has been filed with the corporation counsel within

six months after the date the injury was sustained."[13]  Thus, James could have filed

a claim with the Corporation Counsel, and if necessary, then filed an action

seeking damages.  James took no steps to avail herself of this process, *see* Doc. No.

37-4, Winston Wong Decl. ¶¶ 3-4, and James offers no argument as to why filing a

claim and then a civil action is insufficient process.

The court therefore DENIES Plaintiff's Motion for Summary

Judgment on her due process claim.

### 2.    *Conversion (Count 9) and Trespass to Chattels (Count 12)*

James argues that she is entitled to summary judgment on her

conversion claim because it is undisputed that the City has illegally used or abused

the signs, and/or wrongfully detained them after James' demands for their return.

---

[13]  At the August 12, 2014 hearing, counsel for the City confirmed that ROH § 29-19.5, providing that "the owner of impounded personal property shall bear the responsibility for the risk of any loss or damage to the impounded property," did not preclude James from filing a claim for damages with the City, based on the City's negligence.

*See* Doc. No. 31-1, Pl.'s Mot. at 8 (citing *Freddy Nobriga Enters. v. State, Dep't of Hawaiian Home Lands*, 129 Haw. 123, 129, 295 P.3d 993, 999 (Haw. App. 2013)). James similarly argues that she is entitled to summary judgment on her trespass to chattels claim because the City damaged her signs and also deprived her the use of the chattel for a substantial time. *Id.* at 9-10 (citing Restatement (Second) of Torts § 218)). For the same reasons described above, the facts, viewed in a light most favorable to the City, do not establish that the City illegally used, abused, wrongfully detained, damaged, or deprived James of the signs where James concedes for purposes of her Motion that the City properly seized them pursuant to Article 19, James could have obtained the signs by modifying the language in the Release Form, and James was given an opportunity to file a claim for damages to the signs. The court therefore DENIES Plaintiff's Motion for Summary Judgment on her conversion and trespass to chattels claims.

///

///

///

///

///

///

28

## V.  <u>CONCLUSION</u>

Based on the above, the court DENIES the Motions for Summary

Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 20, 2014.



 /s/ J. Michael Seabright   
J. Michael Seabright
United States District Judge

*James v. City & Cnty. of Honolulu*, Civ. No. 13-00397 JMS-BMK, Order (1) Denying Defendant City and County of Honolulu's Motion for Summary Judgment, Doc. No. 29; and (2) Denying Plaintiff Choon James' Motion for Summary Judgment And/or Partial Summary Judgment, Doc. No. 31