1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3                              )
    CHOON JAMES,               )   CV 13-00397 JMS-BMK
4                              )
            Plaintiff,         )   Honolulu, Hawaii
5        vs.                   )   August 12, 2014
                               )   1:30 P.M.
6    CITY AND COUNTY OF HONOLULU, )
    et al.,                    )   Motions for Summary Judgment
7                              )
            Defendants.        )
8    _____)

9                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
10               UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:        RICHARD L. HOLCOMB
                               Holcomb Law
13                             1136 Union Mall, Ste. 808
                               Honolulu, HI 96813
14
     For the Defendant:        PAUL S. AOKI
15                             NICOLETTE WINTER
                               Dept. of Corporation Counsel
16                             Honolulu Hale
                               530 S. King St., Rm. 110
17                             Honolulu, HI 96813

18   Official Court Reporter:  Debra Kekuna Chun, RPR, CRR
                               United States District Court
19                             300 Ala Moana Blvd. Ste. C285
                               Honolulu, HI 96850
20                             (808) 541-2061

21

22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

EXHIBIT A

1   TUESDAY, AUGUST 12, 2014              1:30 O'CLOCK P.M.

2            THE CLERK:  Civil Number 13-00397, Choon James versus

3   City and County of Honolulu.  This hearing has been called for

4   a Motion for Summary Judgment.

5            Your appearances for the record, please.

6            MR. HOLCOMB:  Good afternoon, Your Honor.  Richard

7   Holcomb here on behalf of Miss James, who is also present.

8            THE COURT:  All right.  Yes.  Good afternoon.

9            MR. AOKI:  Good afternoon, Your Honor.  Nicolette

10  Winter and Paul Aoki, representing the City and County of

11  Honolulu.

12            THE COURT:  Yes.  Okay.  You may be seated.  Thank

13  you.

14            All right.  So we have two motions; right?

15            MR. HOLCOMB:  Correct, Your Honor.

16            THE COURT:  Who wants to start?

17            Mr. Aoki, you want to start with yours?

18            MR. AOKI:  Yes, Your Honor.

19            Your Honor, we have moved for summary judgment on all

20  counts of plaintiff's complaint.  Basis for our motion is that

21  the fundamental starting point for the plaintiff's complaint is

22  that she was entitled to possession of the property and,

23  therefore, was entitled to put the signs up, and the City had

24  no right to take down the signs.  We have provided to the court

25  the evidence that we believe demonstrates conclusively that the

1    City had legal possession of the property.

2         THE COURT:  But it's really legal argument; right?  I

3    mean, you're saying you had the order, and the statute --

4    that's what the statute permits.  I mean, there's no facts --

5         MR. AOKI:  Correct, Your Honor.

6         THE COURT:  -- beyond the state court action that

7    you've submitted that you want me to consider.  Is that

8    generally accurate on this issue?

9         MR. AOKI:  Yes, Your Honor.  The two things --

10        THE COURT:  Because I agree with you in part, and

11   what I mean by that is this:  I agree in general terms that

12   what I'll refer to as the quick-take statute -- I don't know if

13   that's the right nomenclature or not, but the quick-take

14   statute in the normal course in the way it can be used, if you

15   go through the appropriate process -- and I don't think there's

16   an allegation that that process was inappropriate.  There's a

17   claim Miss James has it's not a public taking and so forth, and

18   that's to be litigated further as permitted under the state

19   law.  I don't think there's any claim that the quick-take

20   action itself, the obtaining of that order -- you did have an

21   an argument about the order seemed to be entered before the

22   motion or something, but I think you're just mistaking the

23   file-stamping with the date of filing.

24        MR. HOLCOMB:  Well, Your Honor, the only reason that

25   I put that in there is it just appears to be this perfunctory

1   procedure that they use all the time, but I have conceded that,

2   yes, this is the order.

3          THE COURT:  All right.  And let's say,

4   hypothetically, that you have a fire station that's going to be

5   built and the funding is there:  The Council had actually

6   passed the funding.  It didn't get sort of delayed.  And you

7   engage in that process and you could pretty much immediately do

8   what you needed to do to start that process of planning and

9   building the fire station, I think it's pretty clear, including

10  your ability to exclude Miss James.

11         The problem I have with this case and what -- why I

12  see it somewhat different is during this interim -- and I

13  understand these things can happen.  I'm not placing blame on

14  the fact the City Council didn't fund this fire station.

15  That's just -- you certainly can't help that.  It just didn't

16  happen for a number of years.  But during that interim the City

17  sent its bills to Miss James to pay taxes on that property,

18  which she paid, and the City even cited her, as I understand

19  it, for not clearing the land, grubbing the land or mowing or

20  whatever the case may be.

21         And so although you may be right legally in the

22  abstract, in this case it seems to me that through your -- I

23  say "your."  I mean the City's actions -- there's a genuine

24  issue of material fact as to whether or not -- as you put in

25  your motion, your motion is premised on the fact the City has

1    exclusive rights to that land, exclusive rights -- there's a

2    genuine issue of material fact as to whether under these facts

3    that's true or not.

4            I can have exclusive right to my land legally, but I

5    can invite somebody on.  I can invite someone to put a sign up,

6    if I wanted to.  And there's nothing illegal about them doing

7    that.  So I want to be careful not to suggest there's something

8    wrong with the statutory process or what was followed.  It's

9    more that one hand of the City didn't know what the other hand

10   of the City was doing.  And so I think it's a real stretch to

11   grant summary judgment under these facts where I think the

12   facts could suggest, perhaps unknowingly, but the City was

13   sending a message to Miss James that there was this sort of

14   joint possession agreement that was going on, that both of you

15   had certain rights and access to the land, which undermines

16   your theory as to exclusivity.

17           So why don't you address that.

18           MR. AOKI:  Thank you, Your Honor.

19           Your Honor, assuming -- I recognize your concern.

20   That doesn't affect our position or our entitlement to summary

21   judgment on this motion.  The fact that the -- there could have

22   been ambiguity as to whether or not we had possession does not

23   preclude us from removing the signs.

24           THE COURT:  Well, it might.  It might.  In other

25   words, if there was some sort of an agreement that you both

1    could possess that property; right?  Then it might -- that

2    might be the case.  And the premise of your motion and what I'm

3    going to rule on is -- the premise of your motion is that the

4    exclusive right to that property was the City's.  That's the

5    premise that you cite.  You say that throughout that motion.

6    And I understand the argument from a legal perspective, from a

7    purely legal perspective, Mr. Aoki, I do understand that.  But

8    when you get down to the facts of this case, it is different

9    because of what the City did perhaps unwittingly.

10          MR. AOKI:  Your Honor, I think the focus is on what

11   the City did, and the City was acting pursuant to its right to

12   the property.  Even if there was confusion on Mrs. James' part

13   as to whether or not she had a right to be there, the City --

14   the City's actions were entirely within its power and right to

15   remove the signs based on the City's legal right to the

16   property.  We are not --

17          THE COURT:  You can't do anything on the property.

18   You can only do on the property what benefited the public

19   interest for your purpose -- for taking the property; right?

20          MR. AOKI:  Your Honor, I think we are entitled to

21   possess and use the property pretty much any way we see fit.

22          THE COURT:  No, I don't think that's what the law

23   says.

24          MR. AOKI:  Your Honor, that statute has been

25   interpreted by the Hawai'i Supreme Court.

1          THE COURT:  Yeah, but not any way.  That's -- not any

2   way.

3          MR. AOKI:  That may be a little overstatement, Your

4   Honor, but --

5          THE COURT:  Yeah, in other words, if the City's view

6   was, "We don't like her First Amendment speech.  We invited her

7   on this land, but we don't like her First Amendment speech, and

8   so we're going to take her signs down because we don't like her

9   First Amendment speech," I don't think that's what the Supreme

10  Court said.

11         I think what the Supreme Court said -- again the City

12  Council didn't authorize the funding for that, and so if you

13  could have made some money by turning it into a parking lot for

14  a couple of years while that process was ongoing, you could

15  have done that.  You know, you can make interim use of the

16  property is what the Supreme Court is saying.

17         But, regardless, the basis of your motion was -- that

18  I'm going to rule on is the exclusive right to that property

19  was yours.  You didn't argue in the alternative that even if

20  she had a right.

21         MR. AOKI:  No, Your Honor, because our position is

22  that we did have exclusive right to that property, that even if

23  there were mistakes made with respect to the taxes and the

24  mowing of the grass, that doesn't change the legal rights to

25  the property.

1          The plaintiff has argued this point under the theory

2    of estoppel, Your Honor, and estoppel does not apply in this

3    case.

4          THE COURT:  I'm not saying estoppel applies.  I

5    understand -- it's very hard to estop the government.  I

6    understand that.  There has to be something more than just

7    statements that are relied on.  It has to rise to the level of

8    almost bad faith, of intentional misleading, that sort of

9    thing.  But I'm not saying it was estoppel.  That's not what

10   I'm saying.

11         MR. AOKI:  Okay, Your Honor.

12         Your Honor, I guess I don't have anything else to add

13   at that point, Your Honor.

14         THE COURT:  All right.  Mr. Holcomb.

15         MR. HOLCOMB:  Your Honor, as a purely housekeeping

16   matter as to their motion for summary judgment, I'm wondering

17   if I need to address their argument that my concise statement

18   of facts in response was not filed until 7:15.  I was up at

19   11:00.  PACER wouldn't let me file it.  I e-mailed immediately

20   your office.

21         THE COURT:  No, I'm not going to get hung up on that

22   sort of -- especially with your representation that you were

23   having trouble getting on PACER.

24         MR. HOLCOMB:  Yes, sir.  I sent a copy of the screen

25   shot of the error even.

1           THE COURT:  All right.

2           MR. HOLCOMB:  But in any event, I don't know if

3    you're asking for arguments on our motion or --

4           THE COURT:  No, no.  You're just opposing the --

5           MR. HOLCOMB:  Okay.  Well, I think Your Honor is

6    exactly correct.  I think that -- I would agree with you as to

7    your first inclination with the limitations of the statute in

8    the order itself.  The statute and the order themselves and the

9    Hawai'i Supreme Court authority tend to limit it, limit their

10   authority to enter the land, to furtherance of whatever project

11   for the public purpose that they've taken the land.  And in

12   this case there was no project to further.  They had proposed

13   this fire station.  The fire station has been deleted from the

14   City's budget for at least the past three years.  It wasn't

15   even proposed on the fourth year.  So they had no authority to

16   go out there at all pursuant to this order.  But, nevertheless,

17   even if they had, they have treated Miss James as the -- I

18   would say the sole possessor of this property.

19          THE COURT:  Well, that's why I want to stay away from

20   that issue, if I can, as to whether or not they had authority

21   to go on the land.

22          MR. HOLCOMB:  Very well.

23          THE COURT:  But it seems to me the premise of the

24   motion is they had the exclusive right to it, and I think

25   through this interaction -- it's not an estoppel argument or

1    premise.  It's through the custom and practice between the two

2    of them that there could be viewed an implicit agreement that

3    she had access and rights to possess the land.  For whatever

4    purposes we don't know, and that may be up to the finder of

5    fact ultimately here.  And so that's where I do have some

6    problems with the motion.

7           MR. HOLCOMB:  Yeah, I mean, I agree with that.

8           THE COURT:  You'll take a win any way you can get

9    it.

10          MR. HOLCOMB:  That's correct, Your Honor.

11          THE COURT:  All right.  Any rebuttal on this motion?

12          MR. AOKI:  On our motion, Your Honor, no.

13          THE COURT:  All right.  So I'm going to deny that

14   motion.  I will put out an order on that.

15          All right.  Your motion, Mr. Holcomb.

16          MR. HOLCOMB:  Yes, Your Honor.  We have assumed for

17   the purpose of this motion that the actual taking of the sign

18   was authorized.  Although, obviously, Miss James does

19   vehemently deny that that is the case.

20          As we have raised our replevin issue, Your Honor,

21   following our status conference Miss James has gone and

22   reobtained the signs.

23          THE COURT:  So let me ask you, then, the replevin, I

24   generally have seen replevin as someone's holding something of

25   mine, and I'm seeking to get it back.  And you have it back.

1    There may be a limited right to damages for replevin, but

2    wouldn't that be just really overlapping with your other claims

3    at this point in time?

4            MR. HOLCOMB:  Well, Your Honor, at this point in time

5    I believe we have prevailed on that claim because the City for

6    the first time in their response says, "Yes, Miss James she can

7    come get it.  She can modify the form."  And we went and got

8    it.

9            THE COURT:  So you have it; so the claims don't --

10            MR. HOLCOMB:  Yeah, that's my point, Your Honor.

11    Replevin we are no longer seeking your order on.

12            THE COURT:  Okay.  So I can just say the replevin

13    claim has been --

14            MR. HOLCOMB:  Resolved.

15            THE COURT:  -- resolved.  I'll leave it later for

16    attorneys' fees issues regarding that without saying how it's

17    resolved but just no longer before the court.

18            MR. HOLCOMB:  Very well, Your Honor.

19            THE COURT:  All right.

20            MR. HOLCOMB:  The remaining counts of the complaint

21    that we do have are due process, which is counts 2 and 6;

22    conversion, which is count 9; and trespass to chattels, which

23    is count 4.  Those are the only counts that we have raised in

24    this motion other than replevin.

25            And, Your Honor, the due process claim, I am very

1   well-aware, obviously, of your order in *De Occupy*.

2   Nevertheless, we believe that notice and the opportunity to be

3   heard are the cornerstones of due process.  Under the United

4   States Supreme Court precedent *Fuentes* it doesn't matter that

5   Miss James actually got the signs back now.  She's still

6   entitled to summary judgment because of this procedural defect.

7          Even though the items have been returned I find it,

8   frankly, astounding that the City argues that it's somehow

9   Miss James' burden to show that a hearing would add something

10  valuable -- anything of value to the determination of these

11  issues.  I mean, due process, the hearing, should be in place

12  at any time they're contemplating taking someone's property and

13  before they do so.  And that to me is a very big problem with

14  the historic property ordinance altogether.

15         But we asking that you do rule on that.  And, in

16  addition, we have raised the conversion and trespass to

17  chattels.  Quite frankly, Your Honor, I think the law's pretty

18  self-explanatory on that.

19         THE COURT:  Well, the problem I have with that, a lot

20  of this is -- and it seems to me, and this gets sort of tricky,

21  but you end up losing some of these arguments based on your

22  concession.  In other words, if you agree the City has the

23  right to go on the land, then you're setting the whole thing up

24  that it was public property.  And under article 19, you know,

25  of the ordinance they had the right to go on there and so

1    forth.  So what conversion is there?  I mean, that's the

2    problem I'm having with some -- by conceding you're sort of

3    also, I think, missing ability to prove some of your

4    elements.

5              MR. HOLCOMB:  Well, Your Honor, I do -- well, in my

6    mind and based on the definition of "conversion" by the Hawai'i

7    Supreme Court, the actual taking of the signs, that's one act

8    that could be conversion, which we have not raised under this

9    motion.  Instead what we have raised is the refusal to give the

10   signs back upon a proper demand from the --

11             THE COURT:  But if I find, Mr. Holcomb -- and I think

12   I'm inclined to -- there's a genuine issue of material fact as

13   to whether or not the City would have agreed to delete out

14   the -- I understand why she didn't want to sign that.  I

15   perfectly understand that, given the ongoing state action.  But

16   if there is a genuine issue there just factually --

17             MR. HOLCOMB:  Right.

18             THE COURT:  Just assume for a minute that that's

19   where I'm going to go on that.  That undermines wherever you're

20   trying to go with this; right?

21             MR. HOLCOMB:  You can strike that particular instance

22   that could constitute conversion, and that would be then tried

23   by or decided by the trier of fact.

24             THE COURT:  Right.

25             MR. HOLCOMB:  But the second issue that constitutes

1   conversion is the abuse of the chattel.  Here they damaged it.

2   And I believe that regardless of what right they may have to

3   take anyone's property, regardless of the circumstances, that

4   doesn't give them the right to then damage the property.  And

5   that, we believe, constitutes conversion and/or trespass to

6   chattel.

7           THE COURT:  All right.  But help me because I'm a

8   little confused on that.

9           MR. HOLCOMB:  Okay.

10          THE COURT:  So let's assume for a minute that they do

11  take the property under the ordinance, and let's assume for a

12  minute they damage the property.  There's negligence in the way

13  they handle it, they're sloppy, whatever the case may be.  So

14  let's assume that is the case for this discussion.  What I'm

15  hearing from the City is, well, you have to just file an

16  administrative claim with the City for that.  In other words,

17  there is a process in place under the City Charter 13-111

18          MR. HOLCOMB:  Okay.

19          THE COURT:  And so -- and I want to ask Mr. Aoki

20  about this in a minute when he's speaking to me, but, if that

21  is the case, then I'm a little -- I'm trying to understand what

22  the claim is because I agree with you to the extent of, if they

23  damage property, there has to be some process by which you can

24  get restitution for that damage.  I understand that claim.  And

25  if the City had said, no, we're not responsible for damaging

1   your property under any circumstances, period, then I hear you,

2   and I'm with you, Mr. Holcomb.

3           MR. HOLCOMB:  Right.

4           THE COURT:  But that's not what I'm hearing, and

5   that's not what I'm seeing in the City Charter.

6           MR. HOLCOMB:  Okay.  Your Honor, in this instance,

7   insofar as Miss James was permitted to seek these damages, she

8   could not define what damages she was seeking because they

9   still kept the sign up until that point.  Now that she has the

10  sign back, she may be --

11          THE COURT:  Well, but it gets back to there's a

12  genuine issue as to whether they would have given it to her

13  earlier.  I mean, it gets back to that whole -- it all gets

14  kind of messy because one part of it is related to another part

15  of it.

16          MR. HOLCOMB:  I agree that it's very closely

17  related.

18          THE COURT:  Okay.  All right.

19          Let me ask the City this question.  I just want to

20  make sure I understand your position on this:  29-19.5 is

21  titled Storage and Disposal.  And it says impounded personal

22  property shall be moved to a place of storage, and the owner

23  shall be assessed moving, storage, and other related fees and

24  costs.

25          I believe the City is not doing that.

1          But it goes on and says, quote, Additionally, the

2     owner of impounded personal property shall bear the

3     responsibility for the risk of any loss or damage to the

4     impounded property.

5          Then we have what you quoted to me, the City Charter

6     13-111, which says that an action for recovery of damages based

7     on negligence may be maintained if you exhaust your

8     administrative remedy, essentially.  That is, you go to Corp.

9     Counsel, make a request first.

10         So are you affirmatively stating before me and

11    through these pleadings that, if, in fact, Miss James'

12    property -- let's take this case -- was damaged by the City --

13    and just hypothetically assume that to be the case.  They took

14    the sign and they dropped it and broke it, let's say.  That

15    there is a process in place through 13-111 under which she can

16    recover damages as a result of the City's negligence?

17         MR. AOKI:  Yes, Your Honor.

18         THE COURT:  Okay.  And it's not your position that

19    the language that the owner shall bear the responsibility for

20    risk of loss or damage overrides somehow 13-111 or -- I'm

21    sorry.  Yeah, 13-111.

22         MR. AOKI:  No, Your Honor.  She could file the claim,

23    we would evaluate it, and if it was denied, she could then seek

24    legal --

25         THE COURT:  Remedy.

 1          MR. AOKI:  -- remedies.  The --

 2          THE COURT:  And to be clear what I'm asking is

 3   29-19.5 is not a defense that the City could raise then, saying

 4   we're not responsible under the law.  Because you can't have it

 5   both ways.  You can't say on the one hand you can file a claim,

 6   and on the other hand you file a claim and we say the law

 7   doesn't allow you to get ever any money.

 8          MR. AOKI:  No, Your Honor.

 9          THE COURT:  You're not making that claim.

10          MR. AOKI:  No, we're not.

11          THE COURT:  All right.  So --

12          MR. AOKI:  Your Honor, just to be clear we would

13   assert a defense that, if you put a sign improperly on City

14   property and we need to remove it and something happens and --

15          THE COURT:  That gets to whether or not you were

16   negligent or not and so forth.

17          MR. AOKI:  Exactly.

18          THE COURT:  But I'm taking just the hypothetical just

19   so I'm clear that -- let's say you get the sign.  It's easily

20   removal, and you've removed the sign, and they were going to

21   put it in the truck, and they drop it and the post breaks, that

22   sort of thing.

23          MR. AOKI:  Right.

24          THE COURT:  They could make a claim, and if you

25   found, yeah, that is what happened, then you would pay out on

1   that claim.

2          MR. AOKI:  Yes, Your Honor.

3          THE COURT:  All right.  And I'm not getting to what

4   your substantive defenses might be as much as this legal

5   framework.

6          MR. AOKI:  Okay, Your Honor.

7          THE COURT:  All right.  Do you have anything else,

8   then, regarding Mr. Holcomb's motion?

9          MR. AOKI:  Your Honor, our position on these claims

10  is that there was no need for a hearing because we were willing

11  from the beginning to return the property as long as Mrs. James

12  was willing to sign the form that said she was the owner.

13  Since she wasn't willing to do that we didn't -- there were no

14  other conditions, Your Honor.  As our statement of facts

15  indicates, the City employee who first spoke with Mrs. James

16  when she went to the City yard to recover the signs, he

17  actually volunteered to take the signs and deliver them for

18  her.  She couldn't take them at that time, she didn't want them

19  at that time, and then subsequently he learned that he needed

20  to get a form signed that would show that she was the owner

21  before he could turn it over to her, and that's when the

22  disagreement over the form began.  But from the beginning the

23  only requirement for return of the signs was just that she

24  agree that and sign the form attesting that she was the owner.

25          THE COURT:  Well, let me be clear about something.

1   As I understand what you're saying is there was also a window

2   for her to ask that it's public property be stricken from that.

3   In other words, that she just -- like she did with the second

4   time.  It's not before me.

5           MR. AOKI:  Correct, Your Honor.

6           THE COURT:  All right.

7           MR. AOKI:  Your Honor, I just want to address the

8   issue regarding that form.  Even if the language about public

9   property wasn't stricken, there's no problem with that.  For

10  one thing, since they've admitted that we had the right to take

11  the signs, I think that also is an admission --

12          THE COURT:  Well, that's what I'm saying.  There's a

13  problem there that -- it seems to me when they work off all of

14  these assumptions, it undermines the motion itself.

15          MR. AOKI:  Right.  Even if they hadn't agreed to

16  that, Your Honor, the fact that we had possession was

17  already -- she signed the form.  It could not have been --

18          THE COURT:  No, the form, though, as written -- if

19  she signed it as written, the problem is this -- says it was on

20  public property.  She's disputing that in the state court

21  action.  And so she would have a right to say, especially as a

22  layperson, you know, maybe I shouldn't be signing this because

23  I'm disputing this fact.

24          MR. AOKI:  Your Honor, as of that time, the order

25  entered by the state court said that it was our property.  We

1    had possession of it.

2              THE COURT:  Yeah, but she's disputing that.  That's a

3    quick-take statute.  She has rights after that.

4              MR. AOKI:  Right.  And she was disputing it.  We have

5    been trying to have a trial in that thing for a long time, Your

6    Honor, and they've taken three continuances.  But she has

7    always had the right to contest that.  So the fact that she

8    signed something that was in agreement with the existing order

9    wouldn't have changed anything in the state proceedings.

10             THE COURT:  Well, I don't know about that, but it

11   seems to me there's a genuine issue of material fact as to

12   whether or not she could just cross that out and they would

13   have returned the sign.  And that's I think, the bottom line

14   here.

15             MR. AOKI:  Okay.  Thank you, Your Honor.

16             THE COURT:  Mr. Holcomb, briefly.

17             MR. HOLCOMB:  Yeah, very briefly, Your Honor.  You

18   know, I am confused about this new disputed material fact, and

19   the reason is in the admissions, numbers 18 and 19 --

20             THE COURT:  Help me with a -- where it is in the

21   paperwork.

22             MR. HOLCOMB:  Yes, sir.  Docket 32-3, page 7.

23             THE COURT:  32-3?

24             MR. HOLCOMB:  32-3, Your Honor.

25             THE COURT:  Page 7.  Okay.

1          MR. HOLCOMB:  Yes, sir.

2          THE COURT:  Yes.

3          MR. HOLCOMB:  And there the numbers 18 and 19:  After

4  the seizure the City was willing to release the signs to

5  Miss James if she would sign a release, impounded property

6  form, stating --

7          THE COURT:  Right.

8          MR. HOLCOMB:  Quoting the form.  And the signs were

9  not released because she refused to release the form.  And

10  we --

11          THE COURT:  But it's true.  They were willing to

12  release the forms with that.  The question is whether they'd be

13  willing to release them with something less that than.

14          MR. HOLCOMB:  Okay.

15          THE COURT:  See, that's the question, I think.

16          MR. HOLCOMB:  All right.

17          THE COURT:  And although -- I admit the declaration

18  from the City isn't a model of clarity.  This is summary

19  judgment, and, you know, the benefit of the doubt is going to

20  go to the opposing party on this.  And so I think there's

21  enough there that suggests that that was something that was on

22  the table.

23          MR. HOLCOMB:  Okay.  And to the contrary, Miss James

24  says there wasn't.

25          THE COURT:  That's her right to say that, but this is

 1   summary judgment.

 2             MR. HOLCOMB:  Right.  Okay.  Thank you, Your Honor.

 3             THE COURT:  So I'm going to deny this motion as well.

 4             MR. HOLCOMB:  Thank you, Your Honor.

 5             THE COURT:  I'll put out a written order on it.

 6             MR. HOLCOMB:  Okay.

 7             THE COURT:  Okay?  Thank you.

 8             MR. HOLCOMB:  Thank you.

 9        (Court recessed at 2:00 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                COURT REPORTER'S CERTIFICATE

 2          I, Debra Kekuna Chun, Official Court Reporter, United

 3   States District Court, District of Hawaii, do hereby certify

 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5   true, and correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the regulations

 8   of the Judicial Conference of the United States.

 9          DATED at Honolulu, Hawaii, September 17, 2014.

10

11                                 /s/ Debra Chun
                                   _____
12                                 DEBRA KEKUNA CHUN

13                                 RPR, CRR

14

15

16

17

18

19

20

21

22

23

24

25
```