IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHOON JAMES, | ) | CIV. NO. 13-00397 JMS-BMK |
| | ) | |
| Plaintiff, | ) | AMENDED FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT |
| vs. | ) | IN PART AND DENY IN PART |
| | ) | PLAINTIFF'S MOTION FOR |
| CITY AND COUNTY OF | ) | ATTORNEYS' FEES AND TO |
| HONOLULU, | ) | GRANT PLAINTIFF'S MOTION |
| | ) | FOR COSTS |
| Defendant. | ) | |
| _____ | ) | |

## AMENDED[1] FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND TO GRANT PLAINTIFF'S MOTION FOR COSTS

Before the Court is Plaintiff Choon James' Motion for Attorneys' Fees and Plaintiff's Motion for Taxation of Costs, both filed September 9, 2014. (Docs. 56, 58.) Plaintiff argues, inter alia, that she is the prevailing party in this action and requests an award of $55,286.36 in attorneys' fees and $400 in costs. (Doc. 56 at 3; Doc. 72 at 15; Doc. 58 at 2.) After careful consideration of the Motions, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court finds that Plaintiff is the

---

[1] This Amended Findings and Recommendation is issued to correct a typo on page 21, which incorrectly stated this Court's finding with regard to counsels' reasonable hourly rate, and amends the originally filed Findings and Recommendation (Doc. 73) to accurately reflect the findings of this Court. The remainder of this Amended Findings and Recommendation remains unchanged.

prevailing party in this action.   Accordingly, the Court recommends that the District

Judge award Plaintiff $25,407.68 in attorneys' fees and $400 in costs, for a total

award of $25,807.68.   Thus, this Court recommends that Plaintiff's Motion for

Attorneys' Fees be GRANTED IN PART AND DENIED IN PART, and that

Plaintiff's Motion for Costs be GRANTED.

## BACKGROUND

On August 13, 2013, Plaintiff filed a complaint against Defendant City

and County of Honolulu ("Defendant" or "City") challenging the constitutionality of

the City's "Stored Property Ordinance," Bill 54 (2011), codified as Chapter 29,

Article 19 of the Revised Ordinances of Honolulu ("ROH"), which provides that the

City may seize personal property left on public property after providing twenty-four

hours written notice requiring its removal.   (See Doc. 1 at 2, 5).   Plaintiff's claims

stem from Defendant's seizure of two signs Plaintiff erected on the property located

at 54-282 Kamehameha Highway ("Property").   (See Doc. 1 at 3, 7-8.)   Although

Plaintiff is the legal owner of the Property, at all times relevant to this case, the

Property was the subject of an ongoing eminent domain action in the First Circuit

Court of the State of Hawaii, and prior to the City's removal of Plaintiff's signs from

the Property, the City had obtained an Ex Parte Order of Possession ("Possession

Order") pursuant to Hawaii Revised Statutes ("HRS") § 101-29.[2]   (See Doc. 12 at 3,

5.)   Plaintiff subsequently went to a City storage facility to retrieve her signs, but

refused to sign the City's Release Form for fear that it could affect the pending state

court action.   (Doc. 32-2 at 2-3, ¶¶ 12-15.)   Plaintiff sought injunctive relief and

damages for alleged violations of the First, Fourth, and Fourteenth Amendments to

the United States Constitution, pursuant to 42 U.S.C. § 1983, and under Hawaii's

constitutional counterparts, Hawaii State Constitution, Art. I, §§ 2, 4-8.   (Doc. 1 at

10-13.)   Plaintiff also alleged various state law tort claims including trespass,

conversion, replevin, negligence, and trespass to chattels.   (Doc. 1 at 13-15.)   On

November 12, 2013, Defendant filed an answer to Plaintiff's Complaint, denying all

of Plaintiff's allegations and maintaining that the Possession Order gave Defendant

the exclusive right of possession of the Property, thus making Defendant's removal

of the signs lawful.   (See Doc. 12 at 3, 8.)

On June 25, 2014, Defendant filed a Motion for Summary Judgment,

arguing that it is entitled to judgment as a matter of law because "it is undisputed that

the City has exclusive possession of the subject property," and therefore, Plaintiff's

claims, "which center solely on the City's entry onto the subject property and

---

[2] HRS § 101-29 provides, in relevant part, that upon a motion for an order of possession showing prima facie evidence of (1) the State or county's right to maintain a possession action and (2) the public use for which the real property sought to be condemned is being taken, and upon the payment of the sum of money estimated to be just compensation or damages for the taking of real property, "the court shall issue an order ex parte putting the State or county in possession of the real property sought to be condemned and permitting the State or county to do such work thereon as may be required for the purpose for which the taking of the property is sought."   HRS § 101-29 (2013).

removal of signs from the subject property, fail as a matter of law."   (Doc. 29 at 2.)

Plaintiff also filed a Motion for Summary Judgment on June 25, 2014, and argued that even assuming Defendant was authorized to seize the signs, an issue she otherwise disputes, Plaintiff is still entitled to summary judgment on several of her claims.   (See Doc. 31 at 2-3.)   Specifically, Plaintiff requested that the Court grant summary judgment as to Plaintiff's claim for replevin, order the immediate return of the two signs that were removed from the Property, and grant partial summary judgment as to:   (1) Plaintiff's due process claims, declaring that the City's failure to provide Plaintiff with a hearing in regards to the removal and/or continued detention of her signs violated Plaintiff's due process rights; (2) Plaintiff's conversion claim, declaring that Defendant's act of damaging and/or detaining Plaintiff's signs constitutes conversion; and (3) Plaintiff's trespass to chattels claim, declaring that Defendant's act of damaging and/or detaining the signs for more than one year constitutes trespass to chattels.   (Doc. 31 at 2-3.)   With regard to the request for partial summary judgment, Plaintiff requested that the Court reserve the issue of damages for trial.   (Id.)

Pursuant to an Order filed August 20, 2014, District Judge J. Michael Seabright denied the parties' motions for summary judgment.   (Doc. 48.)   With regard to Defendant's Motion for Summary Judgment, Judge Seabright found that

although the City was awarded possession of the Property, genuine issues of fact

existed as to whether the Possession Order granted the City exclusive possession of

the Property and whether the City exercised exclusive possession of the Property at

the time it removed Plaintiff's signs.   (See Doc. 48 at 20-21.)   With regard to

Plaintiff's Motion for Summary Judgment, Judge Seabright found, in relevant part,

there was no real impediment to Plaintiff retrieving her signs, and thus, when viewed

in a light most favorable to the City, Plaintiff failed to establish that she was entitled

to a hearing to challenge the language of the City's Release Form.   (See Doc. 48 at

26.)   Judge Seabright further found Plaintiff was not denied a meaningful

opportunity to seek compensation for the damage to her signs, and instead, she failed

to avail herself of the process to submit a claim for such damages.   (Doc. 48 at

26-27.)   Based on these reasons, Judge Seabright found Plaintiff failed to establish

that the City illegally used, abused, wrongfully detained, damaged, or deprived

Plaintiff of her signs.   (Doc. 48 at 28.)

Following Judge Seabright's Order denying the parties' motions for

summary judgment, the parties agreed to settle their dispute.   (Docs. 52, 63-1.)

Under the terms of the Settlement Agreement, Defendant agreed to pay Plaintiff

twenty-one dollars ($21.00) "in consideration" for Plaintiff releasing Defendant

from "any and all claims . . . alleged in the Lawsuit."   (Doc. 63-1 at 1-2, ¶¶ 5-6.)

The Settlement Agreement specifically provides that no admission of liability is to be construed from the settlement, and instead, the settlement shall be considered "strictly as a compromise of contested claims."   (Doc. 63-1 at 2, ¶ 7.)   Under the Settlement Agreement, however, the Court "may consider the fact of settlement, payment and/or receipt of consideration and other terms of this Agreement to determine 'prevailing party' status" for purposes of attorneys' fees.   (Doc. 63-1 at 2, ¶7.)   The Settlement Agreement reserved Plaintiff's right to seek attorneys' fees and costs, and reserved Defendant's right to dispute Plaintiff's entitlement to and amount of fees and costs requested.   (Doc. 63-1 at 2, ¶ 8.)   On September 15, 2014, the parties filed a Stipulation to Dismiss with Prejudice, dismissing this action. (Doc. 64.)

On September 9, 2014, Plaintiff filed a Motion for Attorneys' Fees, and a Motion for Taxation of Costs,[3] seeking an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, as the prevailing party in this action.   (Docs. 56, 58.)

## DISCUSSION

## I.   Motion for Attorneys' Fees

### A.   Entitlement to Attorneys' Fees

---

[3] On September 26, 2014, the Clerk's Office taxed costs in the amount of $400.00 against Defendant.   (Doc. 67.) Defendant filed an Objection to the Clerk's Taxation of Costs on October 1, 2014.   (Doc. 69.)   The Court subsequently vacated the Clerk's Taxation of Costs, reopened Plaintiff's Motion for Taxation of Costs, and issued a briefing schedule.   (Doc. 71.)

Plaintiff requests an award of attorneys' fees pursuant to 42 U.S.C. § 1988, which provides in part that the court, in its discretion, may award reasonable attorneys' fees to the prevailing party in an action brought under 42 U.S.C. § 1983. See 42 U.S.C. § 1988(b).   The "prevailing party" in a § 1983 action should ordinarily recover attorneys' fees "absent special circumstances which would render the award unjust."   Runyon v. Fasi, 762 F. Supp. 280, 285 (D. Haw. 1991) (citations omitted).   In bringing the present case, Plaintiff alleged violations of the First, Fourth, and Fourteenth Amendments as well as of 42 U.S.C. § 1983.   (See Doc. 1 at 1-2.)   Pursuant to 42 U.S.C. § 1988, this Court must first determine whether Plaintiff is the prevailing party in this action, and absent special circumstances, may find that an award of reasonable attorney's fees is appropriate.

### B.   Prevailing Party

"To be considered a prevailing party, a party must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."   Robinson v. Plourde, 717 F. Supp. 2d 1092, 1096 (D. Haw. 2010) (internal quotation marks and citations omitted).   The Ninth Circuit has repeatedly held that a party does not have to win a final judgment in order to qualify as the prevailing party under 42 U.S.C. § 1988, rather, in order to be a prevailing party, "a plaintiff need only establish some sort of clear, causal relationship between the

7

litigation brought and the practical outcome realized." Tokuhama v. City & Cnty. of Honolulu, 751 F. Supp. 1394, 1396-97 (D. Haw. 1990) (citing Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir. 1983)) (internal quotation marks omitted).   In Clark v. City of Los Angeles, 803 F.2d 987 (9th Cir. 1986), the Ninth Circuit further explained that

> Plaintiffs need not obtain formal relief in order to enjoy prevailing party status.   It is enough that plaintiffs received some of the benefit they sought in bringing the suit.
>
> Whether a litigant has shown a sufficient causal relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court.

Clark, 803 F.2d at 989-990 (citations omitted).   The Ninth Circuit has adopted the following two-part test for determining prevailing party status when a case has not gone to final judgment:

> the party seeking to establish "prevailing party" status must demonstrate that:   (1) as a factual matter, the relief sought by the lawsuit was in fact obtained as a result of having brought the action, and (2) there was a legal basis for the plaintiffs' claim.   Under the first level of inquiry, the court must identify what the lawsuit originally sought to accomplish and what relief actually was obtained.   It must then determine whether there exists a "clear causal relationship between the litigation brought and the practical outcome realized." This realized relief may come in the form of a settlement or other disposition of the case.   The critical factor is whether the party seeking fees has, as a result of bringing the lawsuit, received some or all of the relief originally sought.

Under the second inquiry, the court must determine whether there was a legal basis for the claim.   While this requires some evaluation of the merits, this evaluation is extremely limited.   The extent of the court's inquiry is strictly limited to determining whether the claims asserted are "frivolous, unreasonable, or groundless, or whether the plaintiff continued to litigate after they became so."

Andrew v. Bowen, 837 F.2d 875, 877-78 (9th Cir. 1988) (citations and brackets

omitted).   Thus, it follows that a plaintiff may qualify as the prevailing party after

settling with the defendant if the plaintiff:

1a) received at least some of the benefit sought in bringing suit, 1b) can show a clear causal relationship between the litigation brought and the practical outcome realized, and 2) can show that there was a legal basis for the claim.

Tokuhama, 751 F. Supp. at 1398.

In the case at bar, Plaintiff requested, inter alia, the Court (1) declare

ROH Chapter 29, Article 19 unconstitutional; (2) declare Defendants' actions

violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments; (3)

grant preliminary and permanent injunctive relief enjoining Defendant from,

generally, entering private property for the purpose of seizing personal property, and

destroying such property absent prior written notice and the opportunity to seek pre-

and post- deprivation remedies to recover such property; (4) compensatory

damages; and (5) punitive damages.   (See Doc. 1 at 15-17.)   In her Complaint,

Plaintiff maintains that, at the time of filing, she "has not yet been compensated for

9

the damage to her signs," and she was unable to reclaim her signs unless she agreed to sign a "Release of Impounded Personal Property" form, which Plaintiff refused to sign out of concern that signing it could affect the pending eminent domain proceedings in State court.   (Doc. 1 at 9, ¶ 29-30.)   Plaintiff alleged a violation of her Fourth Amendment rights, claiming that "Defendants' destruction of Plaintiff's property and/or failure to return the property in a usable condition also constitutes an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution," (Doc. 1 at 10, ¶ 35), and requested, inter alia, compensatory damages for such acts.   (See Doc. 1 at 17.)

Here, Plaintiff claims she has received the relief she requested, namely, her signs were returned after the City agreed to modify its Release Form, and she has been "paid in full for the damages to the sign and a nominal amount for the constitutional violation."   (Doc. 56-1 at 15.)   This Court agrees, in part.   Although it cannot be said that Plaintiff received a "vast majority" of the relief she requested, this Court finds that Plaintiff received at least some of the benefit sought in bringing suit.   Tokuhama, 751 F. Supp. at 1398.

During a July 21, 2014 status conference before the Court, Defendant agreed to return Plaintiff's signs if she executed a modified Release Form.   (See Doc. 48 at 7.)   On July 25, 2014, Plaintiff retrieved her signs by signing the

modified Release Form, which the City modified to delete the language Plaintiff found objectionable.   (Doc. 48 at 7; Doc. 45-1 at 2, ¶¶ 5-6.)   With regard to the compensation Plaintiff requested for damage caused to her signs, Plaintiff maintains that upon receiving the sum of twenty-one dollars paid to her as "consideration" for releasing her claims for, inter alia, damages, (Doc. 63-1 at 1-2), Plaintiff "has been paid in full for the damages to the sign and a nominal amount for the constitutional violation."   (Doc. 56-1 at 8.)   Thus, this Court finds that having (1) received her signs, and (2) received consideration for the release of her claims against Defendant, Plaintiff received at least some of the benefit sought in bringing suit.   Tokuhama, 751 F. Supp. at 1398.

Moreover, this Court finds that Plaintiff has demonstrated the requisite causal relationship between the litigation brought and the practical outcome realized; if Plaintiff had not brought this suit, there would have been no agreement to modify the City's Release Form and no settlement agreement compensating Plaintiff for the release of her claims for, inter alia, damages against Defendant.   See Tokuhama, 751 F. Supp. at 1398.   Thus, Plaintiff meets the first prong of the Andrew test.

Finally, according to the "extremely limited" evaluation required by Andrew, it is clear from the facts of the instant case that Plaintiff's claims had a

sufficient legal basis and were not "frivolous, unreasonable, or groundless[.]" Andrew, 837 F.2d at 877-78.   This is sufficiently established by the fact that Judge Seabright denied Defendant's motion for summary judgment, finding that genuine issues of fact existed as to whether the Defendant exercised exclusive possession of the Property at the time it removed Plaintiff's signs, and thus, whether Defendant could unilaterally seize Plaintiff's signs.   (See Doc. 48 at 12, 21.)   Plaintiff therefore meets the second prong of the Andrew test.

Defendant also argues that assuming Plaintiff is the prevailing party in this action, Plaintiff is not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 because she did not prevail on any federal claims.   (Doc. 68 at 18-19.)   This Court disagrees.   A plaintiff "prevails" for purposes of § 1988 "when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).   Relief "on the merits" occurs when the material alteration of the parties' legal relationship is accompanied by "judicial imprimatur on the change."   Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).   A material alteration of the parties' legal relationship occurs when "the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant," and thus "can force

the defendant to do something he otherwise would not have to do."   Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1118 (9th Cir. 2000) (citation omitted).   Judicial imprimatur can come in the form of an enforceable judgment on the merits or a court-ordered consent decree, however, "[o]ther court-approved actions will suffice, provided they entail a judicial determination that the claims on which the plaintiff obtains relief are potentially meritorious."   Higher Taste, Inc. v. City of Tacoma, 717 F.3d 712, 715 (9th Cir. 2013).

    In this case, Plaintiff's Complaint and the subsequent status conference with the Court resulted in Defendant's agreement to modify the Release Form, and eventually, return Plaintiff's signs.   Further, the parties entered into a settlement agreement which awarded Plaintiff twenty-one dollars, and retained the Court's jurisdiction over the issue of Plaintiff's entitlement to attorneys' fees.   (Doc. 63-1 at 1-2, ¶¶ 5-8.)   These actions directly benefitted Plaintiff and were sufficient to constitute a material alteration of the parties' legal relationship.   Moreover, inasmuch as the Settlement Agreement provides the Court with jurisdiction to decide the issue of Plaintiff's entitlement to attorneys' fees, this legally enforceable agreement is sufficient to convey a "judicial imprimatur" that alters the legal relationship of the parties, as required by Buckhannon.   See Richard S. v. Dep't of Developmental Servs. of Cal., 317 F.3d 1080, 1088 (9th Cir. 2003) ("Through [the

parties'] legally enforceable settlement agreement and the district court's retention of jurisdiction [to resolve the issue of attorneys' fees and costs], plaintiffs obtained a 'judicial imprimatur' that alters the legal relationship of the parties[.]"); Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 n.5 (9th Cir. 2002) (finding that "the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees," and thus, the agreement provided "sufficient judicial oversight to justify an award of attorneys' fees and costs"); Justin R. v. Matayoshi, Civ. No. 12–16048, 2014 WL 905817, at *1 (9th Cir. Mar. 10, 2014) (finding that a settlement agreement stating that the district court shall retain jurisdiction to determine the issue of Plaintiffs' entitlement to reasonable attorneys' fees and costs provided sufficient judicial imprimatur); cf P.N. v. Seattle Sch. Dist., No. 1, 474 F.3d 1165, 1173 (9th Cir. 2007) (finding that there was no "judicial imprimatur" of the settlement agreement at issue where the agreement failed to "contemplate any judicial enforcement" and the matter of attorneys' fees and costs "was not referred to any court[.]").   Accordingly, based on the parties' settlement agreement, which provides that this Court retains jurisdiction to decide the issue of Plaintiff's entitlement to attorneys' fees, this Court finds that Plaintiff is the prevailing party and is entitled to an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).   Defendant's argument to the contrary is without merit.

14

### C.    Calculation of Attorneys' Fees

Insofar as the Court has determined that Plaintiff is the "prevailing party," the Court now assesses the amount of fees to which Plaintiff is entitled.   The Supreme Court of the United States and the Ninth Circuit have both ruled that several different factors must be considered by the court when calculating the amount of attorneys' fees to be awarded to a prevailing party, and thus, "even under 42 U.S.C. § 1988[,] a prevailing party may receive substantially less than full attorney's fees."   Tokuhama, 751 F. Supp. at 1396 (citations omitted).

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983).  See Fischer, 214 F.3d at 1119.   The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."   Id. (citing Hensley, 461 U.S. at 433).   Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not already been subsumed in the initial lodestar calculation.   Id. (citations omitted).   Fischer, 214 F.3d at 1119.

The product of reasonable hours times a reasonable rate does not end the inquiry, instead,

> There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."   This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his [or her] claims for relief.   In this situation two questions must be addressed.   First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he [or she] succeeded?   Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Hensley, 461 U.S. at 434 (footnote omitted).   In cases that involve a common core of facts or are based on related legal theories, such that the lawsuit cannot be viewed as a series of discrete claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."   Id. at 435.   Thus, where a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount[,]" and this will be true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."   Id. at 436.   Because there is no precise rule or formula for making these determinations, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.   The court necessarily has discretion in making this equitable judgment."   Id. at 436-37.

Here, Plaintiff requests the following attorneys' fees for work

performed by their attorneys Richard L. Holcomb ("Holcomb") and Brian J. Brazier ("Brazier"):

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Richard L. Holcomb | 139.9[4] | $355.00 | $49,664.50 |
| TAX (4.712%) | | | $2,340.19 |
| **Holcomb's Subtotal** | | | **$52,004.69** |
| Brian J. Brazier | 13.125 | $250.00 | $3,281.25 |
| TAX (4.712%) | | | $154.61 |
| **Brazier's Subtotal** | | | **$3,435.86** |
| **TOTAL** | **153.025** | | **$55,440.55** |

The Court is now tasked with determining the reasonableness of the requested hourly rates and time expended.

## 1.    Reasonable Hourly Rate

"'Reasonable fees' in a federal civil rights action are to be calculated according to prevailing market rates in the relevant community."    Runyon, 762 F. Supp. at 286 (citation omitted).    "In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken

---

[4] Holcomb originally requested 130.7 hours for time spent litigating Plaintiff's claim, (Doc. 56-2 at 18, ¶52), and subsequently requested an additional 9.2 hours for time spent drafting Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees.   (Doc. 72 at 15.)   Although Holcomb asserts that he is entitled to an award of fees in the amount of $63,337.18, (see Doc. 56-2 at 20; Doc. 72 at 15), according to the Court's own calculation based on the number of hours Holcomb describes, this amount should be $49,664.50, plus Hawaii General Excise Tax of 4.712%, for a total fee request of $52,004.69.

into account."   Robinson v. Plourde, 717 F. Supp. 2d 1092, 1097 (citation omitted).

"It is the burden of the fee applicant to produce satisfactory evidence, in addition to

an affidavit from the fee applicant, demonstrating that the requested hourly rate

reflects prevailing community rates for similar services."   Id. at 1098 (citing Jordan

v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987)).

      Plaintiff presents, in relevant part, (1) declarations of Plaintiff's

counsel detailing their experience, (Docs. 56-2 and 57); (2) a handful of articles

detailing the high cost of living in the State of Hawaii, and the gap between

Hawaii-based salaries and mainland-based salaries, (Docs. 56-6, 56-7, 56-8, 56-9

and 56-10); (3) a Pacific Business News article indicating that the City is paying

$295-$495 per hour in attorneys' fees to defend itself against legal challenges filed

by opponents of the rail transit system,[5]  (Doc. 56-11); and (4) an opinion of the

Hawaii Supreme Court awarding attorneys' fees and costs to the plaintiff in the rail

transit system suit.   (Doc. 56-12.)

      As an initial matter, it is irrelevant that attorneys in other districts may

---

[5]  Rather than applying Hawaii rates, Plaintiff claims that the court should consider the "Laffey Matrix" in determining a reasonable hourly rate.   (See Doc. 56-2 at 9, ¶¶ 27-28.)   As explained by the Court in Hawaii Defense Foundation v. City & County of Honolulu, Civ. No. 12-00469 JMS-RLP, 2014 WL 2804448, at *3 (June 19, 2014), the Laffey Matrix, which is a grid of inflation-adjusted hourly rates for lawyers with varying levels of experience in Washington, D.C., was rejected as a means to determine reasonable hourly rates because it is "not evidence of the prevailing rates in the District of Hawaii."   Id. (citing Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.")).   Thus, this Court will not consider the Laffey Matrix as evidence of prevailing market rates in Hawaii.   See JJCO, Inc. v. Isuzu Motors Am., Inc., Civ. No. 08-00419 SOM-LEK, 2010 WL 3001924, at *10 n.4 (D. Haw. July 30, 2010) report and recommendation adopted as modified, 2010 WL 4272980 (D. Haw. Oct. 21, 2010) (rejecting the Laffey matrix as evidence of the prevailing market rates in Hawaii).

receive higher hourly rates, or that Hawaii has a higher cost of living and lower

salary ranges.   Rather, the Court must determine a reasonable hourly rate in this

market, based on the hourly rate, the experience, skill, and reputation of the

attorneys requesting the fees.   <u>Robinson</u>, 717 F. Supp. 2d at 1097.   Moreover,

Plaintiff's counsels' prior attempt to rely on the Pacific Business News article as

evidence of prevailing market rates was previously rejected by Judge Seabright in

<u>Hawaii Defense Foundation v. City & County of Honolulu</u> as "unhelpful in

determining the prevailing market rates in Hawaii for similar services[,]" because

the hourly rates listed in that article "are not tied in any way to the particular

attorneys charging such rates – there is no information indicating the experience,

skill, and reputation of counsel."   Civ. No. 12-00469 JMS-RLP, 2014 WL 2804448,

at *4 (June 19, 2014).

      Moreover, Holcomb's and Brazier's attempt to justify their requested

hourly rates by comparing the instant Civil Rights case to the complex rail transit

litigation previously before the Hawaii Supreme Court provides no meaningful

guidance to this Court as to the reasonableness of counsels' requested rates.   In

<u>Hawaii Defense Foundation</u>, Holcomb and Brazier sought attorneys' fees and costs

after settling their clients' Civil Rights case against the City,[6] which alleged

---

[6] The plaintiff's motion for attorneys' fees and costs in Hawaii Defense Foundation also included another attorney, who is not relevant to the discussion herein, and therefore, is not mentioned.   <u>See</u> <u>Hawaii Defense Foundation</u>, 2014

violations of plaintiffs' First and Fourteenth Amendment rights when plaintiffs' posts to the Honolulu Police Department's social media page on Facebook.com were removed and plaintiffs were blocked from making further posts.   <u>Hawaii Defense Foundation</u>, 2014 WL 2804448, at *1.   In support of their requested hourly rate, counsel attempted to compare their client's case to the rail transit litigation before the Hawaii Supreme Court.   <u>See</u> <u>Hawaii Defense Foundation</u>, 2014 WL 2804448, at *4.   Judge Seabright held that such a comparison provided "no meaningful guidance to the court," and held that "[t]he scope and complexity of work on the rail transit project, which has faced multiple federal and state legal challenges and has several moving parts, is not at all comparable to the work required in this single case, which was far less contentious and was largely resolved through a negotiated settlement."   <u>Id.</u> (footnote omitted).   Similarly, here, Plaintiff's case is not at all comparable to the work required in the rail transit litigation, and therefore, this Court finds that such a comparison is equally unhelpful in providing guidance to the Court as to reasonableness of the hourly rates requested by Plaintiff's counsel.

In addition to their own statements, attorneys are required to submit additional evidence that the rates charged are reasonable.   <u>See</u> <u>Jordan v. Multnomah Cnty.</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).   Here, as support for counsels'

_____

WL 2804448, at *2.

requested hourly rates, Plaintiff provides declarations which greatly detail counsels'
experience, but fail to explain how their experience compares to any reasonable rate
in this district.   (See Docs. 56-2 and 57.)   Although the District Court has
previously noted that Plaintiff's counsel has had some successes in civil rights
litigation, see Hawaii Defense Foundation, at *4, the Court is well aware of the
prevailing rates in the community for similar services performed by attorneys of
comparable experience, skill, and reputation.   Based on this Court's knowledge of
the community's prevailing rates, the hourly rates generally granted by the Court,
the Court's familiarity with this case, and the attorneys' submissions, this Court
finds that a reasonable hourly rate for Holcomb and Brazier are $200 and $185,
respectively.   See, e.g., Hawaii Defense Foundation, at *5 (determining that a
hourly rate of $200 for Holcomb, and $185 for Brazier were reasonable).

## 2.    Number of Hours Reasonably Expended

Beyond establishing a reasonable hourly rate, the fee applicant bears
the burden of proving that the number of hours expended was associated with the
relief requested and reasonably necessary to achieve the results obtained.   See
Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993).

Defendant objects to the number of hours requested on the grounds that
Plaintiff's entries include:   (1) excessive billing; (2) inadequate descriptions; (3)

21

clerical or ministerial acts; (4) duplicative work; (5) block billing; and (6) time spent

on an unfiled motion.   (<u>See</u> Doc. 68 at 25-34.)   The Court addresses Defendant's

objections in turn.


### a)   Excessive Billing

Defendant first argues that the time spent researching, drafting,

reviewing, and revising the Complaint was excessive inasmuch as "the vast majority

of the content in the instant Complain is literally lifted and 'supercopied' from the

complaint filed in [] <u>De-Occupy Honolulu, et al. v. City and County of Honolulu, et</u>

<u>al.</u>, Civil No. CV 12-00668 JMS-KSC."   (Doc. 68 at 25-26.)   Defendant argues

that the 19.15 hours Holcomb and Brazier spent working on Plaintiff's complaint is

"facially unreasonable."   (Doc. 68 at 26.)   Defendant also argues that the 36.8

hours spent related to the motions for summary judgment filed in this case, and the

11.4 hours spent completing the settlement conference statement, are unreasonable.

(Doc. 68 at 27.)   Of this time spent, the Court finds that the 2.6 hours Holcomb

spent "Review[ing] De-Occupy Filings," and "Cop[ying] De-Occupy Complaint

where applicable" are excessive.   (<u>See</u> Doc. 56-13 at 5.)   The Court finds that the

36.8 hours spent related to the parties' motions for summary judgment and the 11.4

hours spent completing the settlement conference statement is reasonable and

compensable.   Thus, this Court recommends that Holcomb's requested hours be reduced by 2.6.   See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) (finding that the hours reported by counsel may be reduced "if the hours expended are deemed excessive or otherwise unnecessary").

### b)   Inadequate Descriptions

Defendant further argues that Plaintiff cannot recover fees that are not adequately described.   (Doc. 68 at 27.)   Reduction of the hours reported is warranted where counsel has provided inadequate documentation.   Cunningham v. Cnty. of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988); see also Chalmers, 796 F.2d at 1210 ("counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended").   Although Plaintiff's counsel "is not required to record in great detail how each minute of his time was expended," counsel should, at the very least, "identify the general subject matter of his time expenditures."   Hensley, 461 U.S. at 437 n.12.

The Court finds that a reduction in the hours reported by Holcomb and Brazier in the following amounts is appropriate due to the lack of sufficient documentation:

Holcomb

| 9/5/14 | Met with Brian – preparation for meeting with Choon | .7 hours |
|--------|------------------------------------------------------|----------|

Total: 0.7 hours

Brazier

| 8/7/13 | Research re complaint | 1.5 hours |
|---|---|---|
| 8/12/13 | Review/revise complaint | 1.75 hours |
| 3/20/14 | Draft discovery to city; review evidence | 1.5 hours |
| 3/21/14 | Draft discovery to city | 2.375 hours |
| 3/24/14 | Discovery to city; review evidence | 1.25 hours |

Total: 8.375 hours

Thus, this Court recommends a reduction in the amount of hours Holcomb requests by 0.7 hours, and a reduction in the amount of hours Brazier requests by 8.375 hours, for a total reduction of 9.075 hours for insufficient description of services rendered. See Local Rule 54.3(d)(2).

### c) Clerical or Ministerial Acts

Defendant further objects to certain entries on the ground that they include time spent performing clerical or ministerial tasks. (Doc. 68 at 29-31.) "Clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." Jeremiah B. v. Dep't of Educ., Civ. No. 09–00262 DAE–LEK, 2010 WL 346454, at *5 (D. Haw. Jan.29, 2010). Thus, this Court has held that the following tasks are clerical or ministerial and therefore not compensable:

reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

Haw. Motorsports Invest., Inc. v. Clayton Grp. Servs., Inc., Civ. No. 09-00304

SOM-BMK, 2010 WL 4974867, at *5 (D. Haw. Dec. 1, 2010) (citations omitted).

The Court reviewed the entries to which Defendant objects and finds that many include time spent on clerical or ministerial tasks.   The Court therefore recommends that the following hours be deducted from Holcomb's and Brazier's total number of hours:   0.2 hours reviewing Court-generated notices;[7] 0.2 hours scheduling and calendaring dates and deadlines;[8] 0.1 hours notifying a client of dates and deadlines;[9] 4.6 hours preparing documents for filing and for filing documents with the Court;[10] 0.5 hours communicating with Court staff;[11] 2.3 hours

---

[7]  See Plaintiff's entries dated 9/3/14 ("rec'd notice of status conference for 9/12 at 9:30/calendared/e-mailed info to Choon") and 8/22/2014 ("EO from Judge stating Settlement Conf. to be held Tues 26th – Stmt due Mon Calendared"). To the extent that certain entries may be counted in multiple categories of non-billable tasks – i.e., the entry dated 9/3/14 may be considered "reviewing Court-generated notices" as well as "scheduling and calendaring dates and deadlines" – these hours will only be counted towards one category.
[8]  See Plaintiff's entries dated 9/4/2014 (rec'd e-mail from Choon agreeing to meet Friday at 4:30/calendared") and 5/29/2014 ("sent e-mail to Choon asking her to come to office tomorrow 3:30 And that she watch for the draft rogs I'd be sending her later tonight").
[9]  See entry dated 9/5/14 ("e-mailed Choon to confirm meeting today at 4:30").
[10]  See entries dated 8/13/13 ("Compile/scan/save documents and file complaint"), 8/20/14 ("filed COS"), 6/25/14 ("Complied documents, exhibits/saved to file appropriately/filed"), 7/12/14 ("Reviewed CSF against exhibits to make sure everything was there"), 7/14/14 ("Compiled Exhibits with id markers Asked Darko to scan and e-mail exhibits" and "Compiled all Documents together/.pdf and organized for filing/filed (attempted to file CSF on Pacer)"), 7/15/15 ("Filed CSF"), and 9/8/14 ("Estimated time for Dismissal/signature/filing").
[11]  See entries dated 7/14/14 ("e-mailed Judges Kurren and Seabright and Paul with the error I get from Pacer When

maintaining and pulling files;[12]  0.9 hours receiving, downloading, and emailing

documents;[13] and 2.6 hours spent printing documents.[14]   All of the foregoing 11.4

hours were billed by Holcomb, and therefore, the Court recommends that said hours

be deducted from Holcomb's total number of requested hours.

Defendant also maintains that 1.3 hours relating to Holcomb's attempt

to contact Plaintiff should be deducted as "unreasonable and/or as clerical or

ministerial acts."   (Doc. 68 at 33.)   While "[s]ome client communications may be

considered clerical or ministerial, such as merely informing the client that a

document has been filed or what a hearing date is," others that are "more

substantive" are part of an attorney's duties, and therefore billable.   See Nicholas

M. v. Dep't of Educ., State of Hawaii, Civ. No. 09-00162 HG-LEK, 2010 WL

234862, at *5 (D. Haw. Jan. 21, 2010).   Here, while two of the objected-to entries

appear to address substantive issues in the case,[15] the remaining entries are not

---

attempting to file CSF") and 7/15/15 ("On phone with 'Mark(?)' IT guy at fed. Court. Ended up clearing 'cache'").
[12] See entry dated 7/17/13 ("Compiled all documents and notes from client interview").
[13] See entries dated 7/16/13 ("Received/downloaded/reviewed pics from Client of current state of the property"), 7/16/13 ("Received/Print/Review Tax Assessments and Mowing Invoices"), 7/22/14 ("rec'd modified form from Ms. Winter – forwarded to Choon urging to Expeditiously retrieve the signs using the form"), 8/4/14 ("e-mail from Paul – draft Settlement Agreement.   Forwarded to Choon"), 8/5/14 ("rec'd e-mail from Choon – discussed City disclaimer Will explore alternatives to Settlement Agreement"), 9/6/14 ("rec'd signed Agreement from Choon"), 8/5/13 ("Sent Draft Complaint to Choon for verification"), and 8/2?/14 ("Rec'd letter from Paul re: req. for Settlement Conf.").   To the extent that the two entries dated 7/16/13 involve some "review" of the documents received, the Court finds that half of the time requested for these tasks is compensable, and therefore only deducts 0.1 hours for each task, respectively.
[14] See entry dated 9/5/14 ("printed documents of communications/S.A./Conf. Settlement Conf. Stmt./Made notes to discuss with Choon").
[15] See entries dated 8/31/14 and 9/2/14, indicating Holcomb's discussions with Plaintiff about substantive issues in the case.

actual communications with Plaintiff, but attempted communications.[16]   This Court

finds that those entries detailing the amount of time Holcomb spent attempting to

contact Plaintiff are clerical in nature, and thus, not billable.   The Court therefore

recommends that 0.7 hours be deducted from Holcomb's request.

Defendant further argues that Holcomb's entry dated 8/29/14,

indicating Holcomb received an email from Plaintiff detailing concerns with the

settlement agreement and that Holcomb called Plaintiff regarding her concerns, is

unreasonable and/or clerical in nature.   (Doc. 68 at 33.)   The Court finds that this

entry is block billed, and the Court is unable to reasonably apportion the requested

time between the tasks described.   Accordingly, the Court recommends that the 0.2

hours requested in this entry also be deducted from Holcomb's time.

### d)   Duplicative Work

The general rule is that two professionals cannot bill for attending the

same meeting.   Brandon E. v. Dep't of Educ., State of Hawaii, Civ. No. 07-00536

ACK-LEK, 2008 WL 4602533, at *10 (D. Haw. Oct. 16, 2008).   The Court does

not allow more than one attorney to bill for attending (1) a meeting between

co-counsel, (2) a client meeting, or (3) a meeting with opposing counsel.   Ko Olina

Dev., LLC v. Centex Homes, Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at

---

[16] See entries dated 8/26/14 (0.1 hours); 8/27/14 (0.1 hours); 8/28/14 (0.1 hours); two entries dated 9/2/14 (0.1 hours for each); and 9/2/14 (0.2 hours).

*12 (D. Haw. Mar. 29, 2011).   "In such a situation, the Court typically deducts the time spent by the lowest-billing attorney or attorneys."   <u>Sheehan v. Centex Homes</u>, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011) (citation omitted).

Defendant argues that Plaintiff's request contains improper duplicative billings because counsel charged for both Holcomb's and Brazier's appearance at a September 5, 2014 meeting with Plaintiff regarding the consequences of her signing or declining to sign the Settlement Agreement.   (Doc. 56-13 at 5, Doc. 57-2 at 1.) Inasmuch as Holcomb and Brazier both charged for the same meeting, the Court finds that Plaintiff's request contains improper duplicative billings.   Therefore, the Court recommends deducting 1.5 hours from Brazier's time for the September 5, 2014 meeting.   <u>Sheehan</u>, 853 F. Supp. 2d at 1044 ("In such a situation, the Court typically deducts the time spent by the lowest-billing attorney or attorneys.").

### e)      Block Billing

Defendant argues that "[t]he vast majority of Plaintiff's counsel's time entries are block billed," yet, Defendant fails to point to any entries that have been block billed.   (Doc. 68 at 32-33.)   "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."   <u>Robinson v. City of Edmond</u>, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)

(citation and some internal quotation marks omitted).   "Block billed entries

generally fail to specify a breakdown of the time spent on each task."   Harris v.

Trash Man, LLC, Civ. No. 12-00169 HG-KSC, 2013 WL 1932715, at *3 (D. Haw.

Apr. 16, 2013).   District courts have the authority to reduce hours that are billed in

block format because such a billing style makes it difficult for courts to ascertain

how much time counsel expended on specified tasks.   Welch v. Metro. Life Ins.

Co., 480 F.3d 942, 948 (9th Cir. 2007).

        Here, counsel's use of block billing with respect to certain time entries

makes it difficult, if not impossible, for the Court to assess the reasonableness of the

hours expended as to those block billed entries.   Therefore, the Court imposes an

across-the-board reduction of 20% as to those entries that are in the "block billing"

format.   See Signature Homes of Haw., LLC v. Cascade Sur. & Bonding, Inc., Civ.

No. 06-00663 JMS-BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007)

(reducing block billed hours by 20%); Local Rule 54.3(d) (requiring that the

memorandum in support of the motion for attorneys' fees describe "the work

performed by each attorney and paralegal, broken down by hours or fractions thereof

expended on each task").   This Court finds that Holcomb billed 11.9 hours in the

block format.[17]   As such, this Court recommends that Holcomb's requested hours

_____

[17]  Specifically, the 2/12/14 (2.2 hours); 3/10/14 (1.1 hours); 7/17/14 (0.5 hours); 8/19/14 (0.4 hours); 9/7/14 (0.2 hours); 5/12/14 (1.8 hours); 6/24/14 (0.8 hours); 6/25/14 (2.1 hours); and 9/8/14 (2.8 hours) entries were block billed.

be reduced by 2.38 hours.

### f)      Time Spent on Unfiled Motion Not Chargeable

Defendant maintains that the 3.7 hours Holcomb billed for drafting a

"Motion to Withdraw/Declaration of Counsel/Notification Letter/sent to Choon" is

not compensable.   (Doc. 68 at 33.)   Apart from the fact that this entry is block

billed, this Court is persuaded by the case cited by Defendant, which provides that

"time spent on a pleading that was never filed does not advance the case and is not

chargeable."   See Brother v. Int'l Beach Club Condo. Ass'n, Inc., Civ. No. 04-444

ORL-DAB, 2005 WL 1027240 (M.D. Fla. 2005).   According to Hensley, time is

compensable under 42 U.S.C. § 1988 where it is "reasonably expended on the

litigation."   461 U.S. at 433.   Here, an unfiled motion, specifically an unfiled

motion to withdraw as counsel, cannot be said to have been time "reasonably

expended on the litigation."   Therefore, this Court finds that the time Holcomb

spent drafting the unfiled motion to withdraw is not billable, and therefore,

recommends that this time be deducted from Holcomb's requested hours.

### D.      Reduction for Limited Success

Lastly, Defendant argues that if the Court determines Plaintiff is the

prevailing party in this case, the Court should nevertheless deny fees because any

---

The Court notes that the entry dated 9/3/14 (3.7 hours) is also in the block billing format, however, as discussed in Part C.2.f, infra, the Court finds that this time is not billable and therefore does not include it here.

success or victory is "purely technical or de minimis."   (Doc. 68 at 19-21.)

Hensley requires this Court to consider the "results obtained" in calculating the

lodestar figure.   See Morales v. City of San Rafael, 96 F.3d 359, 364 (9th Cir.

1996).   Where a plaintiff achieves only partial or limited success, "[t]he district

court may attempt to identify specific hours that should be eliminated, or it may

simply reduce the award to account for the limited success."   Hensley, 461 U.S. at

436-37.   In determining the appropriate reduction for "limited success,"

> First, the court asks whether the claims upon which the plaintiff failed
> to prevail where related to the plaintiff's successful claims.   If
> unrelated, the final fee award may not include time expended on the
> unsuccessful claims.   If the unsuccessful and successful claims are
> related, then the court must apply the second part of the analysis, in
> which the court evaluates the "significance of the overall relief
> obtained by the plaintiff in relation to the hours reasonably expended
> on the litigation."   If the plaintiff obtained "excellent results," full
> compensation may be appropriate, but if only "partial or limited
> success" was obtained, full compensation may be excessive.   Such
> decisions are within the district court's discretion.

Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901-02 (9th Cir. 1995)

(citations omitted).

### (1)   Related Claims

Unrelated claims are "distinctly different claims for relief that are based

on different facts and legal theories[,]" whereas related claims "involve a common

core of facts or [are] based on related legal theories."   Hensley, 461 U.S. at 434-35.

Here, although the legal theories underlying the claims asserted by Plaintiff against

Defendant are distinct, the claims are all based on a common core of facts, i.e.,

Defendant's removal and seizure of the signs Plaintiff erected on the Property.

Thus, this Court finds that the claims at issue in this case are related.


### (2)     Significance of Overall Relief

When compared to the number of claims Plaintiff originally alleged,

and the value of those claims that her counsel asserted on her behalf during

settlement negotiations, Plaintiff's success must be deemed partial at best.   Where a

plaintiff achieves only partial success "full compensation *may* be excessive."

Schwarz, 73 F.3d at 902 (citation omitted; emphasis added).   This Court has already

applied substantial reductions to counsels' requested hourly rate and hours.   This

Court therefore finds, in the exercise of its sound discretion, that a further reduction

for partial success is not necessary.

### E.    Total Lodestar

In sum, the Court finds that a reasonable hourly fee for Holcomb and

Brazier are $200 and $185, respectively.   This Court further finds that Holcomb and

Brazier reasonably expended 118.22 hours and 3.25 hours, respectively, on this

litigation.   After incorporating this Court's findings and recommendations with

regard to Defendant's objections to the time billed by Holcomb and Brazier, the

Court arrives at the following lodestar amount:

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Richard L. Holcomb | 118.22 | $200.00 | $23,664.00 |
| TAX (4.712%) | | | $1,114.10 |
| **Holcomb's Subtotal** | | | **$24,778.10** |
| Brian J. Brazier | 3.25 | $185.00 | $601.25 |
| TAX (4.712%) | | | $28.33 |
| **Brazier's Subtotal** | | | **$629.58** |
| **TOTAL** | **153.025** | | **$25,407.68** |

Therefore, this Court recommends that Plaintiff's Motion for Attorneys' Fees be

GRANTED IN PART AND DENIED IN PART.   Specifically, this Court

recommends that Plaintiff be awarded $25,407.68 in attorneys' fees.

## II.    Motion for Costs

Plaintiff also seeks costs in the amount of $400 for Plaintiff's filing fee

expenses.   (Doc. 58.)   Rule 54(d)(1) of the Federal Rules of Civil Procedure

provides that costs, other than attorneys' fees, are "allowed to the prevailing party."

Local Rule 54.2 further provides that "[t]he party entitled to costs shall be the

prevailing party in whose favor judgment is entered[.]"   As discussed above,

Plaintiff is the prevailing party in this action, and is therefore entitled to costs.

Defendant's argument that Plaintiff is not entitled to costs because this

action was terminated by settlement agreement is without merit.   (See Doc. 69 at 3;

33

Doc. 70 at 4-5.)   Local Rule 54.2(a) provides, in relevant part:

> Unless otherwise ordered, the court will not determine the party entitled to costs in an action terminated by settlement; the parties must reach agreement regarding entitlement to taxation of costs or bear their own costs.

Although it is undisputed that this action was "terminated by settlement," (see Docs. 63-1, 64), it is clear from the express terms of the Settlement Agreement that "[Plaintiff] and [Defendant] *acknowledge and agree* that *[Plaintiff] may seek* attorneys' fees and *costs* pursuant to applicable law and rules governing the seeking of attorney's fees and costs."   (Doc. 63-1 at 2, ¶ 8; emphasis added.)   Accordingly, this Court finds that Plaintiff is entitled to seek costs, and recommends that Plaintiff's Motion for Costs, requesting $400 in filing fees, be GRANTED.

## CONCLUSION

The Court finds and recommends Plaintiff's Motion for Attorneys' Fees be GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion for Costs be GRANTED.   Any Objection to this Findings and Recommendation shall be filed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, December 8, 2014.

34

 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge


James v. City & Cnty. of Honolulu, Civ. No. 13-00397 JMS-BMK, AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND TO GRANT PLAINTIFF'S MOTION FOR COSTS.