IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHOON JAMES, ) | CIVIL NO. 13-00397 JMS-BMK |
| ) | |
| Plaintiff, ) | ORDER ADOPTING IN PART THE |
| ) | AMENDED FINDINGS AND |
| vs. ) | RECOMMENDATION |
| ) | TO GRANT IN PART AND DENY |
| CITY AND COUNTY OF ) | IN PART PLAINTIFF'S MOTION |
| HONOLULU; and John Does 1-50 in ) | FOR ATTORNEYS' FEES AND TO |
| their individual or official capacities, ) | GRANT PLAINTIFF'S MOTION |
| ) | FOR COSTS, DOC. NO. 74 |
| Defendants. ) | |
| _____ ) | |

**ORDER ADOPTING IN PART AMENDED FINDINGS AND
RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND TO GRANT
PLAINTIFF'S MOTION FOR COSTS, DOC. NO. 74**

**I. INTRODUCTION**

Plaintiff Choon James ("Plaintiff" or "James") filed this action against Defendant City and County of Honolulu ("Defendant" or the "City") asserting violations of the U.S. and Hawaii Constitutions and state law claims stemming from the City's seizure of two signs she placed on 54-282 Kamehameha Highway (the "subject property"). Defendant removed these signs pursuant to Chapter 29, Article 19 of the Revised Ordinances of Honolulu ("ROH") ("Article 19"), which provides that the City may seize personal property left on public

property after providing twenty-four hours notice. Although Plaintiff is the legal title holder of the subject property, it is the subject of an on-going eminent domain action in the First Circuit Court of the State of Hawaii, and at the time of the sign removal, the City had obtained an Ex Parte Order of Possession (the "Possession Order") pursuant to Hawaii Revised Statutes ("HRS") § 101-29.

While the parties' Motions for Summary Judgment were pending, Defendant agreed to return Plaintiff's signs. And after the court denied the Motions for Summary Judgment, the parties reached a settlement in which Defendant paid Plaintiff $21 and Plaintiff dismissed her claims with prejudice. Plaintiff's Motion for Attorneys' Fees followed, in which she sought $55,286.36 in attorneys' fees and $400 in costs.

In his December 8, 2014 Amended Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Attorneys' Fees and to Grant Plaintiff's Motion for Costs ("F&R"), Magistrate Judge Barry M. Kurren determined that Plaintiff was the prevailing party due to the City's return of the signs and payment of $21, and recommended that she be awarded $25,407.68 in attorneys' fees and $400 in costs. *See* Doc. No. 74, F&R at 1-2. Defendant objects to both of these determinations. Based on the following, the court adopts the F&R to the extent it determined that Plaintiff is the prevailing party, although

based on different reasoning. In particular, the court finds that although Defendant's voluntary return of the signs is not a basis for affording Plaintiff prevailing party status, Plaintiff is a prevailing party by virtue of the parties' settlement agreement in which the City agreed to pay Plaintiff $21. In a separate Order, the court requires the parties to provide additional briefing addressing reasonable attorneys' fees in light of the $21 payment.

## II. BACKGROUND

### A. Plaintiff's Complaint

On August 13, 2013, Plaintiff filed this action asserting a panoply of federal constitutional and state law claims stemming from the City's seizure of two signs she placed the subject property. Defendant's seizure of the signs was its first act of possession of the subject property since the Possession Order -- Plaintiff had been paying taxes on, and maintaining, the subject property. When Plaintiff sought the return of her signs, Defendant required Plaintiff to sign a "Release of Impounded Personal Property" ("Release"), to which she objected as including language suggesting that she conceded that the signs were on public property and/or abandoned, and which she worried would be used against her in the State Action.

In total, the Complaint asserted twelve causes of action,[1] and sought a number of forms of relief including declaratory relief (that Article 19 is unconstitutional and that Defendant violated Plaintiff's constitutional rights), preliminary and permanent injunctive relief, compensatory damages, and punitive damages. Doc. No. 1, Compl. at 15-17.

**B.    Summary Judgment Motions**

On June 24 and 25, 2014, the parties filed Motions for Summary Judgment. Doc. Nos. 29, 31. Defendant's Motion argued that summary judgment should be granted on all of Plaintiffs' claims because the Possession Order gives Defendant the exclusive right of possession of the subject property, making Defendant's removal of the signs lawful. Doc. No. 29. In comparison, Plaintiff's Motion argued that even assuming that Defendant was authorized to seize the signs (an issue she otherwise disputed), she is still entitled to summary judgment on her claims for due process, trespass to chattels, conversion, and replevin because it is undisputed that the City wrongfully detained Plaintiff's signs after her demands for their return, and she was afforded no hearing. Doc. No. 31.

---

[1] Plaintiff's claims were titled (1) Violation of Fourth Amendment; (2) Due Process Violation; (3) First Amendment Violation; (4) Failure to Train and Supervise; (5) Hawaii Constitution -- Unreasonable Seizure; (6) Hawaii Constitution -- Property and Due Process Protections; (7) Hawaii Constitution -- Freedom of Speech; (8) Trespass; (9) Conversion; (10) Replevin; (11) Negligence; and (12) Trespass to Chattels.

During a July 21, 2014 status conference, the court raised whether the parties could reach an agreement regarding the return of Plaintiff's signs. Such agreement appeared feasible -- Plaintiff had erected other signs on the subject property which were seized and which she retrieved after modifying the language in the Release to state that she asserts ownership of the impounded personal property. *See* Doc. No. 37-3, W.D. Balfour Decl. ¶¶ 5-8; Doc. No. 37-6, Def.'s Ex. A. Further, in its summary judgment papers, Defendant asserted that it was willing to allow Plaintiff to retrieve her signs so long as she signed a form stating that she asserts ownership over them, and that she could have proposed modifications to any objectionable language in the standardized form for the City's consideration. *See* Doc. No. 37-1, Brown Decl. ¶ 15. Defendant had not suggested such compromise, however, during the pendency of this action. *See* Doc. No. 58-1, Paul Aoki Decl. ¶ 7 (asserting that he "was under the impression that such an offer would be fruitless" in light of his "knowledge of the case, and James' interactions with the City in the past"). Thus, at the July 21, 2014 status conference, Defendant's counsel asserted that Defendant was willing to return Plaintiffs' signs to her, and would allow Plaintiff to modify the language in the Release. Doc. No. 68-1, Paul Aoki Decl. ¶ 4.

On July 25, 2014, Plaintiff retrieved the signs by signing the Release

Form, which the City modified to delete the language Plaintiff found objectionable. Doc. No. 45-1, Pl.'s Decl. ¶¶ 5-6. As a result of the signs' return, Plaintiff represented at the hearing on the Motions for Summary Judgment that her replevin claim was resolved.

On August 20, 2014, the court denied both Motions for Summary Judgment. Doc. No. 48. As to Defendant's Motion, fact questions existed as to whether, despite the Possession Order and at the time Plaintiff had erected the signs, Defendant had exclusive possession of the subject property and/or gave (or shared with) Plaintiff certain rights of possession where the evidence established that Plaintiff continued to pay taxes and maintain the subject property after the Possession Order. *Id.* at 11-21. The court also rejected Plaintiff's Motion where its very premise was that the subject property was public property -- under such facts, there was no basis to support that the City illegally used, abused, wrongfully detained, damaged, or deprived Plaintiff of her signs. *Id*. at 18-28.

**C.    Settlement**

Faced with the prospect of additional discovery and trial, the parties engaged in settlement discussions. At an August 26, 2014 settlement conference before Magistrate Judge Kurren, the parties reached a settlement agreement and the court vacated all remaining dates and deadlines. Doc. No. 52.

On September 6, 2014, the parties entered into a written settlement agreement. The settlement agreement recites that in consideration of $21, Plaintiff agrees to release Defendant from all claims alleged in the action. Doc. No. 76-2, ¶¶ 5-6. Although the Settlement Agreement recites that it should not be construed as any admission and/or inference of fault or wrongdoing by Defendant, it also provides:

> the United States District Court for the District of Hawaii and/or the United States Court of Appeals for the Ninth Circuit may consider the fact of settlement, payment and/or receipt of consideration and other terms of this Agreement to determine 'prevailing party' status for purposes of Paragraph 8 below.
> 8.  Attorneys' Fees.  [Plaintiff] and [Defendant] acknowledge and agree that [Plaintiff] may seek attorneys' fees and costs pursuant to applicable law and rules governing the seeking of attorney's fees and costs. Pursuant to the rules and applicable law, the City may dispute both the entitlement to and amount of fees and costs requested. The court will decide the entitlement to and amount of fees awarded if any. Either party retains the right to object to and/or appeal such awards pursuant to applicable law.

*Id.* ¶¶ 7-8. The parties submitted their stipulation to dismiss the action on September 15, 2014. Doc. No. 64.

///

///

### D. Attorneys' Fees

On September 9, 2014, Plaintiff filed her Motions for Attorneys' Fees and for Taxation of Costs. Doc. Nos. 56, 58. The City filed its Oppositions on October 1, 2014, Doc. Nos. 68-70, and Plaintiff filed a Reply on October 15, 2014. Doc. No. 72. Magistrate Judge Kurren issued his F&R on December 8, 2014, determining that Plaintiff is the prevailing party and recommending that Plaintiff be awarded $25,407.68 in attorneys' fees and $400 in costs, for a total award of $25,807.68. Doc. No. 74. The F&R came to the $25,407.68 figure for attorneys' fees instead of Plaintiff's requested $55,286.36 by rejecting Plaintiff's requested reasonable hourly rates ($200 per hour instead of $355 per hour for Richard Holcomb, and $185 per hour instead of $250 per hour for Brian Brazier), and making reductions in the requested hours for excessive billing, inadequate descriptions, clerical or ministerial acts, duplicative work, block billing, time spent on an unfiled motion (deducting 22.68 hours from Holcomb's requested 139.9 hours, and deducting 9.875 from Brazier's requested 13.125 hours).

On December 22, 2014, the City filed its Objection, arguing that Plaintiff is not the prevailing party and in any event, attorneys' fees should be reduced for Plaintiff's limited success. Doc. No. 75. On January 2, 2015, Plaintiff filed her Response. Doc. No. 76. Pursuant to Local Rule 7.2(d), the court

determines this matter without a hearing.

### III. STANDARD OF REVIEW

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## IV. **DISCUSSION**

The F&R determined that Plaintiff was the prevailing party for purposes of attorneys' fees, entitling Plaintiff to a total award of fees of $25,407.68. Doc. No. 74, F&R at 7-14, 30-32. Defendant objects, arguing that Plaintiff is not a prevailing party pursuant to 42 U.S.C. § 1988, and even if she is afforded prevailing party status, she is not entitled to attorneys' fees because her success was at most technical or de minimis. Doc. No. 75, Defs.' Objs. at 2. Based on a de novo review, the court overrules Defendant's objection to Plaintiff's prevailing party status.

### A.     **Prevailing Party Status Framework**

42 U.S.C. § 1988 entitles the "prevailing party" to its attorneys' fees. "The threshold for sufficient relief to confer prevailing party status is not high." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009). A party prevails when it has "succeeded on any significant issue in [the] litigation which achieved some of the benefit the parties sought in bringing suit." *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989)); *see also Weissburg v. Lancaster Sch. Dist.*, 591 F.3d 1255, 1258 (9th Cir. 2010); *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007)).

Prevailing party status requires a claimant to establish two elements -- the party "must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1172 (9th Cir. 2007) (quoting *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005)); *see also Bennett v. Yoshina*, 259 F.3d 1097, 1101 (9th Cir. 2001) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001)). And because the alteration must be "judicially sanctioned," a defendant's voluntary conduct is insufficient for purposes of prevailing party status. *See Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1031 (9th Cir. 2009) (finding that a voluntary change in conduct is insufficient for prevailing party status absent a judicially sanctioned "*enforceable entitlement* to relief"); *Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901, 906-07 (9th Cir. 2005) (explaining that a "plaintiff who does not secure a judgment on the merits 'but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct' is not a 'prevailing party' for purposes of awarding attorney's fees" (quoting *Buckhannon*, 532 U.S. at 600)).

Relevant to this case, the Ninth Circuit has "held that 'prevailing party' status has been obtained and remains in effect when a party has obtained an

enforceable settlement agreement or consent decree." *Balla v. Idaho*, 677 F.3d 910, 917 (9th Cir. 2012). *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002), explains:

> "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." [*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)]. The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Id*. at 1134 (quoting *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1118 (9th Cir. 2000)). In determining whether a settlement agreement confers a plaintiff prevailing party status, the court applies "a three-part test, looking at: '(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the plaintiff's] claims.'" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (quoting *Saint John's*, 574 F.3d at 1059).

///

///

B.   **Application**

There are two possible bases for awarding Plaintiff prevailing party status -- Defendant's return of Plaintiff's signs, and the Settlement Agreement.

1.   *Return of Plaintiff's Signs*

The court finds that Defendant's return of Plaintiff's signs, standing alone, was voluntary and therefore insufficient to confer prevailing party status to Plaintiff.  Specifically, at a July 21, 2014 status conference on the motions for summary judgment, Defendant agreed to return Plaintiff's signs so long as she signed a Release, the language of which she could modify to delete language she found objectionable.  As a result, Plaintiff modified and signed the Release, and received her signs.  Although the parties discussed this resolution at a status conference before the court, the parties did not reach any enforceable agreement regarding the signs' return before the court, and the court could not have ordered Defendant to return the signs if Defendant changed its mind.  Thus, because this exchange was not ordered or otherwise compelled by the court, it was not "judicially sanctioned" and is not a basis for prevailing party status.  *See Klamath*, 589 F.3d at 1031 ("To receive what one sought is not enough to prevail [for purposes of attorneys' fees]: the court must require one's opponent to give it.").

## 2. *The Payment of $21 Provided in the Settlement Agreement*

Although the return of Plaintiff's signs is not a basis for prevailing party status, the court finds that the parties' settlement agreement meets each of the three requirements necessary for it to confer prevailing party status on Plaintiff. First, the settlement agreement is judicially enforceable -- courts have found that a settlement agreement providing that the court retains jurisdiction over the issue of attorneys' fees is sufficient to convey "judicial imprimatur" over the settlement. *See Richard S. v. Dep't of Developmental Servs. of Cal.*, 317 F.3d 1080, 1087 (9th Cir. 2003) ("Through [the parties'] legally enforceable settlement agreement and the district court's retention of jurisdiction [to resolve the issue of fees and costs], plaintiffs obtained a judicial imprimatur that alters the legal relationship of the parties") (internal quotation marks omitted); *Barrios*, 277 F.3d at 1134 (finding that "the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs"); *Justin R. ex rel. Jennifer R. v. Matayoshi*, F. App'x 619, 620 (9th Cir. 2014) (finding that settlement agreement stating that the district court shall retain jurisdiction to determine the issue of Plaintiffs' entitlement to reasonable attorneys' fees and costs provided sufficient judicial imprimatur); *Cf. P.N.*, 474 F.3d at 1173 (finding

14

that there was no "judicial imprimatur" of the settlement agreement at issue where the agreement did not contemplate any judicial enforcement and the matter of attorneys' fees and costs "was not referred to any court"). The settlement agreement meets this first requirement by providing that "[t]he court will decide the entitlement to and amount of fees awarded, if any." Doc. No. 76-2, Pl.'s Ex. 1 ¶ 8.

Second, the settlement agreement materially altered the legal relationship between the parties. "A settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (quoting *Fischer*, 214 F.3d at 1118); *Cf. Farrar*, 506 U.S. at 113 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."). The settlement agreement required Defendant to pay Plaintiff $21 as consideration for release of Plaintiff's claims.

Finally, the settlement agreement provided Plaintiff actual relief on the merits of her claims. "[A] plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint.' While some relief is required, 'an

extremely small amount of relief is sufficient to confer prevailing party status.'" *La Asociacion*, 624 F.3d at 1090 (quoting *St. John's*, 574 F.3d at 1059-60). In this action, Plaintiff's compensatory damages were not significant -- although not articulated in her Complaint, compensatory damages were arguably for Defendant's seizure and/or injury to her signs, as well as any other damage from the constitutional violations. And according to Plaintiff's counsel, the $21 was full compensation for the damage to the signs (once returned) and a nominal award for the constitutional violation. *See* Doc. No. 76-1, Holcomb Decl. ¶ 9. Thus, the amount received under the settlement agreement, while small, provided Plaintiff at least some relief on her request for compensatory damages.

In opposition, Defendant argues that the settlement agreement is not judicially enforceable where it fails to state that the court retains jurisdiction to enforce its terms. *See* Doc. No. 75, Def.'s Obj. at 18 (citing *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 718 (9th Cir. 2013) (citing *St. John's* for the proposition that "our case law suggests a settlement agreement must be judicially enforceable to meet *Buckhannon's* judicial imprimatur requirement"). Although some caselaw in the Ninth Circuit suggests such requirement, other caselaw (cited above) has specifically held that a settlement agreement meets this requirement where it provides that the court retain jurisdiction over the issue of attorneys' fees.

16

For example, *Justin R.* reversed a district court's finding that a settlement agreement providing that the district court retains jurisdiction over attorneys' fees was not a judicial sanction of a change in the parties' relationship. 561 F. App'x at 620. *Justin R.* explained that the district court's ruling was contrary to *Barrios*, which held "that a plaintiff who enters into an enforceable private settlement agreement providing for judicial resolution of attorney fees is a 'prevailing party.'" *Id.* (citing *Barrios*, 277 F.3d at 1134).[2]

Defendant also cherry-picks phrases from caselaw to argue that there is a material alteration of the parties' legal relationship only where the plaintiff is awarded "much of the relief" she sought, and that the change in the legal relationship must be "enduring." *See* Doc. No. 75, Def.'s Obj. at 17-18. These cases are distinguishable, *see, e.g.*, *CTIA--The Wireless Ass'n v. City & Cnty. of San Francisco*, 2012 WL 10542, at *3 (N.D. Cal. Jan. 3, 2012) (determining that particular preliminary injunctive relief awarded was "ephemeral" and not "enduring" like in other cases where injunctive relief was sufficient for prevailing party status), and do not change the Ninth Circuit's proclamation that "'an

---

[2] The court further rejects Defendant's argument that *Barrios* is contrary to *Buckhannon's* holding that voluntary conduct is insufficient for prevailing party status. *See* Doc. No. 72, Def.'s Obj. at 19-21. *Buckhannon* did not address a court's retention of jurisdiction for purposes of attorneys' fees, and is therefore not dispositive of the issue.

extremely small amount of relief is sufficient to confer prevailing party status.'" *La Asociacion*, 624 F.3d at 1090 (quoting *St. John's*, 574 F.3d at 1059-60). Through the settlement agreement, Plaintiff obtained relief (although minimal), and is therefore the prevailing party.

## V. CONCLUSION

The court therefore OVERRULES Defendant's Objections to the F&R's prevailing party determination. But because the court finds that Plaintiff prevailed only because of the $21 provided in the settlement agreement, the court requires further briefing regarding the amount of reasonable attorneys' fees, as outlined in a separate order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 13, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*James v. City & Cnty. of Honolulu*, Civ. No. 13-00397 JMS-BMK, Order Adopting in Part the Amended Findings and Recommendation To Grant in Part and Deny in Part Plaintiff's Motion For Attorneys' Fees and to Grant Plaintiff's Motion for Costs, Doc. No. 74